IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DAWN HAMELIN, *et al.,*

                Plaintiffs,

                                  Civ. Action No.
                                  6:08-CV-1219 (DNH/DEP)

    vs.

FAXTON-ST. LUKE'S HEALTHCARE,
  *et al.,*

                Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFFS:

DOLIN, THOMAS LAW FIRM         J. NELSON THOMAS, ESQ.
693 East Avenue                      PATRICK SOLOMON, ESQ.
Rochester, NY  14607             JUSTIN M. CORDELLO, ESQ.
                                   MICHAEL J. LINGLE, ESQ.
                                   SARA E. ROOK, ESQ.

FOR DEFENDANTS:

BOND, SHOENECK & KING, PLLC    JONATHAN B. FELLOWS, ESQ.
One Lincoln Center               DANIEL BORDONI, ESQ.
Syracuse, NY  13202            SUBHASH VISWANATHAN, ESQ

O'CONNELL & ARONOWITZ       CORNELIUS D. MURRAY, ESQ.
54 State Street
9th Floor
Albany , NY 12207-2501

HANCOCK & ESTABROOK        JOHN T. McCANN, ESQ.
1500 AXA Tower I
Syracuse, NY  13221

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

Plaintiffs Dawn Hamelin, Rakiesha Griffin, and Julie Flint, each claiming to be a current or former employee of defendant Faxton-St. Luke's Healthcare, have commenced this action against that and several other entities, alleged to be "related organizations", as well as two individual defendants asserting, *inter alia*, that they have violated the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 201 *et seq.*  In the claim relevant to the issues now before the court plaintiffs maintain that defendants' meal break deduction policy and the automatic payroll deduction protocol through which it is implemented, in combination with chronic understaffing and the expectations of administrators that employees be available, including during meal breaks, to attend to patient care demands, have resulted in the defendants' failure to properly compensate their hourly employees.

The three named plaintiffs, who have since been joined by several other current or former employees of defendants consenting to become

plaintiffs in the action, now seek the court's permission to have the matter proceed as a collective action pursuant to 29 U.S.C. § 216(b).  In their motion, plaintiffs request that notice be sent to all of defendants' current and former hourly employees whose pay at any time over the past three years was subject to an automatic meal deduction even when performing compensable work during all or portions of a break period, advising them of the pendency of the suit and their opportunity to opt in as plaintiffs.

Having carefully considered plaintiffs' request and the record now before the court, applying the relatively generous standard for granting such requests at this procedural juncture, I conclude that plaintiffs have only partially met their burden of demonstrating that the proposed class members are all similarly situated.  Accordingly, I will permit the matter to proceed as a collective action, with necessary information being provided by the defendants and notice given to effectuate this end, only with respect to current and former hourly employees with direct patient care responsibilities working at either of the two hospital campuses operated by Faxton-St. Luke's Healthcare, as well as those of a similar description employed at St. Luke's Home Residential Health Care Facility, Inc. ("St. Luke's Home"), but will otherwise deny plaintiffs' application, without

prejudice.

I.    BACKGROUND

At this early stage, not a great deal is known regarding either the three named plaintiffs or the twenty-seven defendants listed.  Plaintiffs' complaint states only that at relevant times they were employees, for purposes of both the FLSA and the New York Labor Law, and employed within this district, without disclosing either their positions or the identities of their respective employers.  *See* Complaint (Dkt. No. 1) ¶ 73. Affirmations given in support of the instant application for permission to proceed as a collective action by the three named plaintiffs and four other individuals who have consented to join in the action are only slightly more revealing.  Each of those affirmations recites that the particular plaintiff was an hourly employee of Faxton-St. Luke's Healthcare, with dates of employment given; none of those affirmations, however, discloses the nature of the particular plaintiff's employment.  Hamelin Aff. (Dkt. No. 18-9) ¶ 2; Flint Aff. (Dkt. No. 18-10) ¶ 2; Roberts Aff. (Dkt. No. 18-11) ¶ 2; Winn Aff. (Dkt. No. 18-12) ¶ 2; Myers Aff. (Dkt. No. 18-13) ¶ 2; Griffin Aff. (Dkt. No. 18-14) ¶ 2; Angell Aff. (Dkt. No. 18-15) ¶ 2.

The information provided by the plaintiffs regarding the several

4

named defendants is equally scant.  In one paragraph of their complaint plaintiffs list the twenty-seven defendants and allege that they "are related organizations through, for example, common membership, governing bodies, trustees and/or officers and benefit plans."  Complaint (Dkt. No. 1) ¶ 14.  According to the plaintiffs, defendants operate various health care facilities and centers, including St. Luke's Home, St. Luke's Hospital, Campus, Allen-Calder Home and Rehabilitation, Regional Renal Dialysis Center, Mohawk Valley Vascular Center, Burrstone Road Medical Office, The Imaging Center, Faxton Campus, The Regional Cancer Center Faxton Campus, Comprehensive Breast Care Center Faxton Campus, Regional Rehabilitation Center, Barneveld Medical Office/Imaging Center, Boonville Medical Office, Harding Nursing Home, Cooperative Magnetic Imaging Center, Herkimer Regional Cancer Center (Herkimer Satellite MVN Medical Arts Center), Mohawk Valley Division Primary Care, Mohawk Valley Division Dental Services, Little Falls Dialysis Satellite, New Hartford Medical Office, North Utica Medical Office, Oneida Dialysis Satellite, Poland Medical Office, Rome Regional Cancer Center Satellite, Rome Regional Dialysis Satellite, Mohawk Glen Center for Community Health, Washington Mills Medical Office, Waterville Medical Office,

Whitesboro Medical Office, Folts Home & Mohawk Valley Nursing Home,

Center for Addiction Recovery and MVN Medical Center.  *Id.* ¶17.

Plaintiffs' complaint also alleges that defendant Keith A. Fenstemacher is

the President of Faxton-St. Luke's Healthcare, with responsibility to

manage the various health care operations referenced, and that

defendant Anthony Scibelli, as Vice President of Human Resources, has

autonomy in overseeing various facets of those operations, including

payroll and compensation services.[1]  *Id.* ¶¶ 24-71.

Defendants' submissions fill some of these voids.  According to the

defendants, Faxton-St. Luke's Healthcare operates two separate

hospitals, including at the Faxton campus, in Utica, New York, and the St.

Luke's campus, located in New Hartford, New York, employing 2360

hourly workers at the two facilities, some of whom are unionized, while

others are not, occupying some 280 different jobs.  Scibelli Aff. (Dkt. No.

47-29) ¶¶ 3, 4, 23.  Defendant St. Luke's Home operates a separate

residential facility, employing approximately 321 hourly workers.  Boulerice

Aff. (Dkt. No. 47) ¶ 3.

Defendants' opposition papers also supply some of the missing

---

[1]      Certain of the originally named defendants have been dismissed from the action, on stipulation.  *See* Dkt. Nos. 60, 62.

information regarding the plaintiffs, including in particular the seven who

have provided affirmations in support of plaintiffs' motion for collective

action certification.  Two of those individuals, Frances Roberts and

Rakiesha Griffin, were previously employed at the St. Luke's Home, Ms.

Roberts as a licensed practical nurse ("LPN"), and Ms. Griffin as a

certified nurse's assistant ("CNA").  Boulerice Aff. (Dkt. No. 47) ¶¶ 1, 18;

Kirkland Aff. (Dkt. No. 47-13) ¶¶ 1, 14.  Plaintiff Dawn Hamelin is a former

employee who worked as an LPN in the Cardiopulmonary Services Unit of

Faxton-St. Luke's Healthcare.  Belmont Aff. (Dkt. No. 47-5) ¶¶ 1, 16.

Christopher Myers is a registered nurse ("RN") who was employed in the

Emergency Department of Faxton-St. Luke's Healthcare.  Tarnacki Aff.

(Dkt. No. 47-9) ¶¶ 1, 12.  Diana Angell and Sharon Winn are both former

employees who worked in the Faxton-St. Luke's Healthcare Ambulatory

Services Unit at the Faxton Campus; the information supplied by the

parties does not disclose their positions at the facility.  Cardarelli Aff. (Dkt.

No. 47-14) ¶¶ 1, 12, 14.  The last of the seven affiants, Julie Flint, is an

LPN who once worked in the Oncology Unit at Faxton-St. Luke's

Healthcare.  Hilterbran Aff. (Dkt. No. 47-25) ¶¶ 1, 13.

        Both Faxton-St. Luke's Healthcare and St. Luke's Home utilize a

computerized time-keeping and payroll system known as Kronos.
Boulerice Aff. (Dkt. No. 47) ¶ 5; Scibelli Aff. (Dkt. No. 47-29) ¶ 8.  In
accordance with established practices at those facilities, an hourly
employee who works a shift of six hours or more in duration is entitled to a
thirty-minute unpaid meal break, which supervisors and managers are to
ensure is available to employees each day.  Boulerice Aff. (Dkt. No. 47) ¶
7; Scibelli Aff. (Dkt. No. 47-29) ¶ 10.  The Kronos program automatically
deducts thirty minutes from an employee's paycheck for that meal break,
thereby obviating the need for clocking in and out during the break.
Boulerice Aff. (Dkt. No. 47) ¶ 8; Scibelli Aff. (Dkt. No. 47-29) ¶ 12.

Faxton-St. Luke's Healthcare has a written policy, requiring
employees to be compensated when they work through their meal breaks.
Under the policy, when that occurs the employee must complete a form
and provide it to his or her supervisor, who then enters the information
into the Kronos system to effectuate cancellation of the automatic meal
period deduction initiated by that program and ensure appropriate
payment for the additional time worked.  Scibelli Aff. (Dkt. No. 47-29) ¶ 12.
This procedure is outlined in the Faxton-St. Luke's Healthcare employee
handbook and its administrative manual, and additionally is imparted to

employees during their initial orientation sessions.  *Id.* at ¶¶ 10-11.

According to its Director of Human Resources, Patricia Boulerice,

St. Luke's Home also utilizes the Kronos system, and requires an

employee who works through a scheduled meal period to complete a form

and give it to his or her supervisor.  Boulerice Aff. (Dkt. No. 47) ¶ 8.  The

appropriate nurse manager or department director is then directed to

enter that information into the Kronos program to override the meal period

deduction.  *Id.*

## II.    PROCEDURAL HISTORY

The three originally named plaintiffs commenced this action on

November 13, 2008.  Dkt. No. 1.  Plaintiffs' complaint sets forth five

separate causes of action, alleging 1) violation of the FLSA; 2) violation of

the New York Labor Law; 3) violation of the Employee Retirement Income

Security Act of 1974, as amended, 29 U.S.C. § 1101 *et seq.* ("ERISA"), for

failure to keep accurate records; 4) breach of fiduciary duty, also in

violation of ERISA; and 5) estoppel.  Since commencement of the action,

a total of one hundred six individuals claiming to be present or former

hourly employees of one or more of the defendants have consented to join

in the action as plaintiffs.  Dkt. Nos. 14-17, 20, 22, 25, 54, 58.

On December 4, 2008, plaintiffs moved to certify this matter as a

collective action.[2]  Dkt. No. 18.  Hand-in-hand with that motion is an

application for a court order requiring disclosure by defendants of the

identities of the potential opt-in plaintiffs, accompanied by other personal

information, and a request that a court-approved notice be sent to the

listed current and former hourly employees of the defendants.  *Id.*

Plaintiffs' application for preliminary collective action certification, which is

vigorously opposed by the various defendants who have thus far

appeared in the action, is now fully briefed, and is before me for

decision.[3,4]

---

[2]    Many of the cases cited, as well as some of the submissions of the
parties, refer to the present motion as seeking to certify a class.  Because the
procedure now being undertaken under 29 U.S.C. § 216(b) is distinctly different from
an application for class certification, including under Rule 23 of the Federal Rules of
Civil Procedure – a request which plaintiffs have advised they contemplate making in
the future – and to avoid confusion, I have chosen to refer to plaintiffs' motion as
seeking preliminary certification of a collective action.

[3]    In their opposition papers, defendants assert that plaintiffs have failed to
meet their threshold burden of demonstrating that the potential opt-in employees, as
described in their motion, are similarly situated to the named plaintiffs, noting the
paucity of evidence regarding similarities, particularly with respect to employees of
many of the entities sued.  Defendants also object to portions of the notice proposed
by the plaintiffs to be sent to potential opt-in current and former hourly employees, and
additionally challenge plaintiffs' right to obtain personally identifiable information
beyond names and addresses necessary for purposes of sending the notice.

[4]    Unlike applications for class certification under Rule 23, which are
dispositive and thus beyond the non-consensual jurisdiction of magistrate judges, *see
Nelson v. Nationwide Mortgage Corp.*, 659 F. Supp. 611, 619-20 (D.D.C. 1987),
requests of the nature now before the court are generally regarded as non-dispositive

III.    DISCUSSION

A.    Controlling Legal Principles

In the portion of their complaint implicated by their motion, plaintiffs

contend that defendants' policies and practices of making automatic meal

break deductions, coupled with their knowledge of or indifference as to

whether their hourly employees are working during those meal breaks

without compensation, violates the FLSA.  That act allows for the

maintenance of collective actions by multiple employees subject to the

same, allegedly unlawful practice or policy through an "opt in" procedure

set out in 29 U.S.C. § 216(b).  Section 216(b) provides, in relevant part,

that

> [a]n action . . . may be maintained against any
> employer . . . in any Federal or State court of
> competent jurisdiction by any one or more
> employees for and in behalf of himself or
> themselves and other employees similarly situated.
> No employee shall be a party plaintiff to any such
> action unless he gives his consent in writing to
> become such a party and such consent is filed in

in nature and thus, as the parties appear to agree, within my jurisdiction.  28 U.S.C. §
636(b)(1)(A); *see Prizmic v. Armaur, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *1
n.1 (E.D.N.Y. June 12, 2006); *Barrus v. Dick's Sporting Goods, Inc.,* 465 F. Supp. 2d
224, 229 n.1 (W.D.N.Y. 2006) (Feldman, M.J.), *aff'd*, 2006 WL 3373117 (W.D.N.Y.
Nov. 3, 2006) (Siragusa, D.J.) (citing *Patton v. Thompson Corp.,* 364 F. Supp. 2d 263,
265-66 (E.D.N.Y. 2006)); *see also Ruggles v. Wellpoint, Inc., __* F. Supp. 2d __, No.
1:08-CV-201 (LEK/RFT), 2008 WL 4866053 (N.D.N.Y. Nov. 6, 2008) (decision by
Magistrate Judge Randolph Treece deciding similar motion).

the court in which such action is brought.

29 U.S.C. § 216(b).  The collective action mechanism serves to both

further the broad, remedial purposes of the FLSA and promote efficiency

in adjudication of such claims.  *Lynch v. United Services Auto. Ass'n,* 491

F. Supp. 2d 357, 367-71 (S.D.N.Y. 2007).  As one court within this circuit

has observed,

> [t]he collective action procedure allows for efficient
> adjudication of similar claims, so "similarly
> situated" employees, whose claims are often small
> and not likely to be brought on an individual basis,
> may join together and pool their resources to
> prosecute their claims.

*Lynch,* 491 F. Supp. 2d at 367 (citing *Hoffman-La Roche Inc. v. Sperling*,

493 U.S. 165, 110 S. Ct. 482 (1989)).  Addressing the potential

efficiencies of a section 216(b) certification, the court in *Lynch* went on to

note that

> [c]ollective adjudication will avoid the proliferation
> of individual lawsuits that could result in disparate
> rulings and wasting of judicial and party resources.
> Requiring [the named plaintiff] and opt-in plaintiffs
> to file separate cases in multiple federal district
> courts would not be an economic use of judicial
> resources.

*Id.* at 371.

Both in this circuit and elsewhere, courts generally employ a two-

12

tiered analysis to determine whether an FLSA suit may proceed as a collective action.   *Ruggles v. Wellpoint, Inc.*, __ F. Supp. 2d __, No. 1:08-CV-201, 2008 WL 4866053 at *4 (N.D.N.Y. Nov. 6, 2008) (Treece, M.J.); *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 256 (E.D.N.Y. 2007).   Initially, the court undertakes examination of plaintiffs' pleadings and affidavits to determine whether they and the other members of the proposed class are sufficiently "similarly situated" to warrant the issuance of notice to all members of the pendency of the suit, and to permit it to proceed as a collective action through discovery.[5]   *Ruggles*, 2008 WL 4866053, at *4 (citing *Lynch,* 491 F. Supp. 2d at 368).

A plaintiff's burden at this preliminary stage is minimal.   *Lynch*, 491 F. Supp. 2d at 368.   All that is to be determined at this first stage is whether the potential opt-in plaintiffs are similarly situated, and thus should receive notice of the pendency of the collective action; when making this finding the court does not weigh the merits, resolve factual

---

[5]   A plaintiff seeking certification of a collective action under section 216(b) must also establish that there are similarly situated employees who desire to opt in and become plaintiffs in the case. *Dybach v. State of Florida Dep't of Corr.,* 942 F.2d 1562, 1657 (11th Cir. 1991); *Ohsann v. L.V. Stabler Hosp.,* No. 2:07-cv-0875-WKW, 2008 WL 2468559, at *2 (M.D. Ala. June 17, 2008); *Frye v. Baptist Mem. Hosp., Inc.*, 2:07-CV-02708, *slip op.* at p. 14 (W.D. Tenn. Sept. 16, 2008).  The interest prong of the relevant inquiry is easily satisfied in this case by virtue of consents already on file from other employees who potentially are similarly situated to the named plaintiffs. *See Ohsann*, 2008 WL 2468559, at *2.

disputes, or make credibility determinations.  *Lynch*, 491 F. Supp. 2d at 368; *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998); *Barrus,* 2006 WL 3373117, at *4; *see also Ruggles,* 2008 WL 4866053, at *6-7. Upon determining that the potential opt-in plaintiffs are similarly situated, the court conditionally certifies the collective action, and the named plaintiffs may then send a court-approved notice to potential members, advising of their right as potential plaintiffs to join in the action by filing consent forms with the court.  *Lynch*, 491 F. Supp. 2d at 367-68

The second phase of the process entails a far more reaching factual analysis to determine whether the class members are actually similarly situated, and the case should continue on as a collective action. *Lynch,* 491 F. Supp. 2d at 367-68; *Iglesias-Mendoza v. La Belle Farm Inc.,* 239 F.R.D. 363, 367 (S.D.N.Y. 2007).  In a sense, this more exacting standard serves as a failsafe mechanism, offsetting the lenity shown at step one; "[p]laintiffs' burden [at the first step] is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage." *Levy v. Verizon Info. Services Inc.*, Nos. 06 CV 1583, 06 CV 5056, 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007).  This second step is

typically initiated by the defendant's filing of a motion for decertification. *Iglesias-Mendoza*, 239 F.R.D. at 367.

This action is at the initial, preliminary certification stage.  At this point plaintiffs bear the burden of demonstrating that they are similarly situated to the remainder of the proposed class, requiring at a minimum that they make a "modest factual showing" that they and the putative class members were "victims of a common policy or plan that violated the law." *Ruggles*, 2008 WL 4866053, at *5 (citations omitted); *see Roebuck*, 239 F. Supp. 2d at 238; *see also Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  If plaintiffs satisfy this burden, conditional certification of the class under the FLSA is warranted.  *Ruggles*, 2008 WL 4866053, at *4.

In their motion plaintiffs argue that all of the defendants' hourly employees are subject to the same automatic meal deduction practice, implemented through use of the Kronos payroll accounting system, and that this common thread alone suffices to justify collective action certification and the sending of notices to all present and past hourly workers affected by this policy.  To be sure, there are some decisions which appear to support this "reduction to the least common denominator"

approach to collective action certification.  *Frye v. Baptist Mem. Hosp., Inc.*, 2:07-CV-02708, *slip op.* (W.D. Tenn. Sept. 16, 2008), is such a case. *Frye* involved a similar practice of automatic meal deductions.  In its decision approving preliminary certification the *Frye* court, while noting that the practice or policy which made the deductions potentially unlawful – the failure to compensate workers for hours worked off the clock – was far from a 'common policy', nonetheless concluded that all employees who were subject to the automatic meal deduction were similarly situated, for purposes of section 216(b).  *Frye*, *slip op.* at pp. 16-18.

As plaintiffs in this case have acknowledged, the mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA.  *See* Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53 , The Health Care Industry and Hours Worked (2008).  It is the failure of an employer to compensate employees who work through those unpaid meal breaks, and to police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated, that potentially runs afoul of the Act.  *Id.*

By all accounts the members of the group which plaintiffs ask the

court to preliminarily certify occupy literally hundreds of job positions some of which involve patient care responsibilities, while others do not.  This, of course, does not necessarily undermine plaintiffs' motion since under section 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.  *See Ruggles*, 2008 WL 4866053, at *7; *Abrams v. Gen. Elec. Co.*, No. 95-CV-1734, 1996 WL 663889, at *2 (N.D.N.Y. Nov. 4, 1996) (Scullin, J.).  For the proposed class members to be deemed similarly situated, however, there must be "demonstra[ble] similarity among the individual situations, . . . some identifiable factual nexus which binds the named plaintiffs and potential class members together *as victims of a particular alleged discrimination*."  *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (citing *Palmer v. Readers Digest Ass'n*, 42 Fair Empl. Prac. 212, 213 (S.D.N.Y. 1986)) (emphasis added and other emphasis omitted); *see also Realite,* 7 F. Supp. 2d at 306.  The similarly situated analysis, then, centers upon the features which make the particular policy or practice unlawful.  *See Ruggles*, 2008 WL 4866053, at *5 (citing cases).

Although the standard which governs plaintiffs' application is lax, and their burden modest, a court must nonetheless take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against an FLSA claim involving a broadly defined collective group of plaintiffs.  *See Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008).  To focus on only one element of an FLSA claim, as the court did in *Frye*, gives rise to the potential for overreaching and would result in loss of the efficiencies envisioned by the drafters of the FLSA. For these reasons, I reject the existence of the break deduction policy practiced through Kronos, standing alone, as being sufficient as a common denominator to permit a collective action on behalf of all of defendants' hourly employees subject to that practice, since something more is required in order to establish that the putative class numbers were all subject to the same unlawful practice.

Addressing the specifics of the case, I note that all of the seven plaintiffs who have given affirmations are former hourly employees of either Faxton-St. Luke's Healthcare or the St. Luke's Home.  Each of those plaintiffs appears to have had direct patient care responsibilities

while working there.  Plaintiffs' complaint alleges that even though

administrators at Faxton-St. Luke's are aware that employees are

performing compensable work through many scheduled meal breaks, they

are not paid for the work, going on to make the following allegation

regarding to what that is attributable:

> Faxton-St. Luke's understands and requires that its
> employees do not sacrifice patient care in order to
> take their meal breaks and that they therefore
> perform work during their meal breaks.  In fact,
> Faxton-St. Luke's expectations of its employees in
> that regard would be consistent with its employees'
> dedication to providing health care service, even if
> that means performing work during their meal
> breaks.

Complaint (Dkt. No. 1) ¶ 80.  Similar representations are echoed in

plaintiffs' affirmations, all of which follow a strikingly similar pattern,

alleging that "it was common" that plaintiffs and others would not receive

the scheduled thirty minute uninterrupted meal period during their shifts,

adding that "[t]he reason – as the Hospital knew and expected – was that

it was of paramount importance that the employees take care of the

patients' needs."[6]  *See, e.g.,* Hamelin Aff. (Dkt. No. 18-9) ¶ 5.  From these

---

[6]     The fact that affidavits submitted in support of plaintiffs' motion appear to
be derived from templates, and are thus "exceptionally similar", does not in and of itself
warrant denial of the certification motion.  *Ruggles,* 2008 WL 4866053, at *6; *see also
Roebuck,* 239 F. Supp. 2d at 239 (referring to affidavits submitted as being similar);

statements I infer that plaintiffs maintain the automatic meal deduction policy, practiced through use of the Kronos system, in combination with the alleged short staffing and patient care demands at the two hospitals operated by Faxton-St. Luke's Healthcare and at St. Luke's Home, resulted in plaintiffs routinely working through or during scheduled meal breaks, without compensation, and with knowledge of administration at the hospital and St. Luke's Home.  *See, e.g., Adair*, 2008 WL 4224360, at *8 (indicating that plaintiffs asserted facts from which it could be inferred that their supervisors knew or should have known that they were regularly working "off the clock"); *Mares v. Caesars Entm't, Inc.*, No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877, at *4 (S.D. Ind. Jan. 10, 2007) (inferring from exhibits submitted by plaintiffs that thirty minute meal breaks went unpaid through early 2004); *Boyd v. Jupiter Aluminum Corp.*, No. 2:05-CV-227PPSAPR, 2006 WL 1518987, at *4 (N.D. Ind. May 31, 2006) (where plaintiffs sought conditional certification and indicated that both they, and through their observations co-workers, as well, were ordered to be at their workstations before the start of their shifts, court was willing to

---

*Realite*, 7 F. Supp. 2d at 307 (noting the submission of affidavits setting forth identical points and positions).

accept the inference that plaintiffs' co-workers were showing up early for the same reasons as plaintiffs – because they were told to do so).

These same conditions obviously do not extend to non-patient care workers at the hospitals and St. Luke's Home including, for example, cafeteria workers, security staff, and clerical workers, and indeed there is nothing in the record now before the court to suggest that the same conditions prevailed with regard to those employees which would mandate their working through or during breaks, with awareness of defendants' administrators.  Under these circumstances, I find that plaintiffs have failed to make even a modest showing that all hourly workers at Faxton-St. Luke's Healthcare and St. Luke's Home, regardless of title, are similarly situated.

The substantial similarity inquiry becomes even more engaging when considering that employees of Faxton–St. Luke's Healthcare and St. Luke's Home are suing other employers alleging substantial similarity among their hourly employees.[7,8]  Of the many reported decisions under

---

[7]     Neither the language of section 216(b) nor the FLSA's definitions of employer and employee, which are not particularly enlightening, disclose whether the Act permits an employee of one employer to bring an FLSA claim against a second employer, and if so under what circumstances.  *See* 29 U.S.C. §§ 203(d), (e)(1).

[8]     Since the filing of their motion plaintiffs have now refined their request, narrowing its focus to involve only hourly employees of defendants Faxton-St. Luke's

section 216(b), only a relatively few have involved actions brought against

multiple employers.  *See, e.g., Fasanelli v. Heartland Brewery, Inc.,* 516

F. Supp. 2d 317 (S.D.N.Y. 2007) (certifying collective action against four

separate corporations and one individual based upon a finding that

together, the defendants operated six restaurants in New York City as "the

same restaurant enterprise"); *see also Iglesias-Mendoza v. La Belle Farm,*

*Inc.,* 239 F.R.D. 363 (S.D.N.Y. 2007) (permitting collective action against

seven corporations and three individuals based upon concession by

defendants that all could be considered as a single entity, and all of

plaintiffs worked as duck feeders on defendants' farm, and further based

on information revealing that all putative claim members were subject to

the same wage, overtime and payroll practices alleged to violate the

FLSA).

The record now before the court is wholly devoid of any evidence

from which the court could conclude, even applying the modest threshold

applicable at step one of the collective action certification process, that

---

Healthcare, Keith A. Fenstemacher, Anthony Scibelli, Mohawk Valley Network, Inc.,
Healthfriends, Inc., St. Luke's Home Residential Health Care Facility, Inc., MVN
Enterprises, Inc., Network Data Systems, LLC, Network Data Systems, Inc., Senior
Network Health, LLC, Centrex Clinical Laboratories, Inc., Visiting Nurse Association of
Utica and Oneida County, Mohawk Valley Homecare, LLC, Mohawk Valley Heart
Institute, Inc., Faxchil Realty, Inc., Faxton Leasing, LLC, and Faxton-St. Luke's
Healthcare Foundation.  *See* Dkt. No. 62.

hourly workers at other of the various defendant entities are similarly situated to those at the hospitals and St. Luke's Home.  No affidavits are given from employees at those facilities, nor do the affirmations provided by the plaintiffs state that they have personal knowledge that health care workers at those facilities are subject to similar short staffing and, by virtue of attending to patient care needs, the need regularly to work through or during scheduled meal breaks, without compensation. *Contrast Realite,* 7 F. Supp. 2d at 309 (permitting granting collective action certification against defendants owning and operating fifteen separate restaurants based upon submission of affidavits where "at least one named plaintiff has worked at each of the 15 Ark Restaurants and is claiming to have personally been subject to FLSA violations at that restaurant"); *Barrus*, 465 F. Supp. 2d at 224 (granting collective action certification based upon affidavits, including from former management level employees, found to be neither unsupported, speculative nor based on conjecture, instead revealing first hand knowledge that the use of a Kronos program was systematically manipulated in order to circumvent the FLSA).

      With this as a base, I conclude that plaintiffs have failed to sustain

their burden of demonstrating that all hourly workers employed by all of the defendants in this case are similarly situated.  I do find, however, that certain of defendants' employees are similarly situated insofar as the allegedly unlawful practices are concerned.  When presented with a situation such as this, the court retains the discretion to reformulate the proposed definition given by the plaintiffs of the potential opt-in class. *Ruggles*, 2008 WL 4866053, at *8 (request for certification as a collective action involving all call center nurses employed by the defendants nationwide reduced to authorize a collective action only with regard to such employees who work as utilization review nurses, medical management nurses, and case management nurses).  In this instance, I will certify the matter at this initial stage as a collective action involving, as putative plaintiffs, all past and present hourly employees of Faxton-St. Luke's Healthcare and St. Luke's Home, including though not limited to registered nurses, licensed practical nurses, and certified nurses' assistants, having responsibility for patient care and treatment and who worked at either facility at any time during the past three years.[9]

---

[9]      Observing that the FLSA statute of limitations, while two years for ordinary violations, expands to three in cases of willful violations, plaintiffs request that the potential group include all hourly employees working for the defendants during any portion of the past three years.  Defendants oppose this request, noting that while

B.    Plaintiffs' Request for Discovery

In order to effectuate the mailing of notices of the pendency of this suit as a collective action and to invite potential group members to elect to opt in, plaintiffs request that the court direct defendants to provide the "name, current or last known address, phone number, social security number, location of employment, dates of employment, dates of birth, and e-mail address" for each potential opt-in plaintiff.  Plaintiffs' Memorandum (Dkt. No. 18-2) at p. 1.  Defendants object to the suggestion that they be required to disclose personally identifiable information beyond that needed to effectuate the giving of notice.

Like most pretrial discovery, plaintiffs' request involves a matter which is entrusted to the court's sound discretion.  *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (recognizing the district court's "broad discretion to direct and manage the pre-trial discovery process").  It is certainly not controversial that in a case such as this, where preliminary certification has been granted, defendants should be required to provide

---

willful violation is alleged the record is devoid of evidence from which willfulness could be established.  Because defendants' position on this issue improperly invites the court to engage in a review of the merits of plaintiffs' claims, I will approve preliminary certification of the case as a collective action for employees utilizing the expanded, three year period.  *See Roebuck,* 239 F. Supp. 2d at 240; *Ohsann*, 2008 WL 2468559, at *3.

names and addresses of potential opt-in plaintiffs; indeed, discovery of

such information was specifically authorized by the Supreme Court in

*Hoffman-LaRoche*, 493 U.S. at 170, 110 S. Ct. at 486.  I agree, however,

that given the present setting plaintiffs have no need for the additional,

inherently private information sought, including e-mail addresses,

telephone numbers, social security numbers, and dates of birth.  *See*

*Ruggles,* 2008 WL 4866053, at *9.  Accordingly, I will order defendants to

produce, within thirty days, lists of all employees falling within the category

described above, to include, with regard to each employee, the name,

current or last known address, dates of employment, and position(s) held.

C.    Notice

Section 216(b) manifests a preference that when collective action

certification is granted, a court-controlled notice be provided to potential

putative plaintiffs, rather than permitting unregulated solicitation efforts to

secure joinder by those individuals.  *See Ruggles*, 2008 WL 4866053, at

*9-10.  The court-supervised notice feature of section 216(b) helps to

ensure that employees receive accurate and timely notice regarding the

pendency of a collective action in order to allow them to make a reasoned

decision regarding whether or not to participate.  *Lynch,* 491 F. Supp. 2d

at 371 (citing *Hoffman-La Roche*, 493 U.S. at 170, 110 S. Ct. at 486). At the initial certification stage, including when crafting an appropriate notice to be sent, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174, 110 S. Ct. at 488.

Among their submissions, plaintiffs have included a proposed notice to be sent to putative opt-in plaintiffs, patterned after the Federal Judicial Center (FJC) sample notice for use in Rule 23 class actions. Defendants object to the contents of the proposed notice as well as plaintiffs' suggestion that the notice be published and posted, in addition to being sent by mail to potential opt-in plaintiffs, and further question their request for an unlimited, or at the very least a one hundred twenty day, period for opting in.

I agree that there are certain difficulties associated with plaintiffs' proposed notice. My preference, however, is that in the first instance the parties should be given an opportunity to negotiate the content of a notice which would be acceptable to the court and consistent with the mandates of section 216(b). If the parties are unable to reach agreement, then the court stands ready to draft its own notice, guided by the parties'

countering proposals.

In terms of the manner of communication, the court believes that in the first instance notices should be sent to all potential opt-in plaintiffs by first class mail.  I further find that posting of the notice on job site bulletin boards is also prudent, but that it is not necessary to order the other means of distribution proposed by the plaintiffs, and that a sixty day opt-in deadline is appropriate.

## IV.   SUMMARY AND CONCLUSION

While the record now before the court, including the affirmations of the named plaintiffs in this case, are lacking in the specificity noted in many other reported decisions, they do disclose a potential, alleged FSLA violation at Faxton-St. Luke's Healthcare and St. Luke's Home resulting from the use of the Kronos system to make automatic meal break deductions for hourly workers, coupled with the fact that employees at those facilities directly engaged in patient care are required on occasion to work through or during those breaks, without compensation, due to the patient care demands associated with their positions.  I will therefore approve preliminary certification of this matter as a collective action, though with a definition of potential opt-in employees significantly reduced

28

in scope from that initially proposed by the plaintiffs, and will provide the

plaintiffs leave, perhaps after engaging in further discovery, to reapply for

additional collective action certification.

I will also grant, in part, plaintiffs' request for discovery from the

defendants of the identities of potential opt-in plaintiffs, including names

and last known addresses, but reject plaintiffs' additional request for

further, inherently private, personal identity information with regard to

those current and former employees.  Turning to the contents of the notice

to be given to potential group members, I am confident that the parties

can agree upon the contents of a notice to be approved by the court and

sent to potential opt-in plaintiffs.

Based upon the foregoing it is hereby

ORDERED, as follows:

1)      Plaintiffs' request for preliminary certification of this matter as

a collective action (Dkt. No. 18) is GRANTED with respect to the following

putative plaintiff class:

> All present and former hourly employees of
> Faxton-St. Luke's Healthcare and St. Luke's
> Home, including but not limited to registered
> nurses, licensed practical nurses, and certified
> nurses' assistants, with direct patient care
> responsibilities who have been subject to

Case 6:08-cv-01219-DNH-DEP   Document 66   Filed 01/26/09   Page 30 of 31

> automatic meal break deductions through use of
> the Kronos system, and who have or may have
> worked through or during unpaid meal breaks
> without compensation at any time during the past
> three years.

2)      Defendants are directed, within thirty (30) days from the date

of this order, to provide to plaintiffs' counsel a list of all employees falling

into the aforementioned category, including each employee's name,

current or last known address, dates of employment, and position(s) held.

3)      The parties are directed to confer with an eye toward jointly

presenting to the court a notice to be sent to potential plaintiffs pursuant to

29 U.S.C. § 216(b).  In the event that the parties are unable to come to

agreement with regard to the contents of that notice within ten (10) days

of the date of this order, each shall submit to the court a proposed notice

for consideration, and the court will draft its own order outlining the notice

to be sent in the case.

4)      Once the notice is approved in form, it shall be sent by first

class mail to all potential plaintiffs in the case and shall be posted by the

defendants conspicuously in approved areas where other labor and

related notices are typically posted.  The notice will provide for a sixty (60)

day opt-in deadline.

Dated:       January 26, 2009
              Syracuse, NY

David E. Peebles
U.S. Magistrate Judge