UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAWN HAMELIN, et al.,

                                    *Plaintiffs,*

                v.                                          Civil Action
                                                            No. 08-CV-1219

FAXTON-ST. LUKE'S HEALTHCARE, et al.,

                                    *Defendants.*


PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTIONS TO
THE DECISION AND ORDER OF THE MAGISTRATE JUDGE

DOLIN, THOMAS & SOLOMON LLP
  *Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
(585) 272-0540
psolomon@theemploymentattorneys.com
nthomas@theemploymentattorneys.com


Of Counsel:   Patrick J. Solomon
              J. Nelson Thomas

# TABLE OF CONTENTS

*Page*

STATEMENT OF OBJECTIONS ..........................................................................................1

PRELIMINARY STATEMENT.........................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND ..................................................3

ARGUMENT AND BASIS FOR OBJECTIONS....................................................5

I.      Legal Standard for Review.................................................................................5

II.     The Magistrate Erred in Completely Prohibiting Non-Coercive, Non-Misleading Communications Between Plaintiffs and Their Counsel and Prospective Class Members ...............................................................................................................6

        A.  Plaintiffs' counsel has a First Amendment right to communicate with party plaintiffs and potential party plaintiffs .............................................................6

        B.  The policies behind the collective action vehicle further support why communication should be permitted ................................................................9

        C.  The Magistrate's Order subverts the goal of the FLSA's collective action provision, and infringes on constitutionally protected speech ......................10

III.    Magistrate's *Sua Sponte* Revisions to the Notice Form are Clearly Erroneous...............17

IV.     The Magistrate Erred in Ordering a Partial Opt-in ......................................21

V.      An Expedited Hearing is Necessary to Preserve the Claims of the Prospective Plaintiffs..............................................................................................................23

CONCLUSION.................................................................................................................24

**STATEMENT OF OBJECTIONS**

On March 16, 2009, Magistrate Peebles issued an order prohibiting class counsel from communicating with putative class members in this FLSA collective action. Plaintiffs object to the provisions of that order to the extent that it:

<u>Restrictions on Communications</u>

1.     Prohibited class counsel from having ethical non-misleading communications with class members – including counsel's ability to discuss with class members their federally protected rights, or even investigate their claims, or answer their inquiries about their rights (Subparagraphs a-d of the Third Ordering paragraph). These provisions are erroneous and contrary to law because they restrict protected non-misleading and non-coercive communications between plaintiffs and their counsel and prospective plaintiffs and did so without a hearing or the findings required by the United States Supreme Court. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981) (any restrictions on such communications cannot be imposed "'without a specific record showing by the moving party of the particular abuses'" alleged to be frustrating the policy behind class actions).

<u>Revisions to Notice Form</u>

2.     Made changes to the notice provided to class members that were not requested by either party and are unnecessary or misleading. These included "warning" class members about non-existent and legally unsupportable counterclaims; suggesting that employees may have to personally pay costs in this action; and removing the Court's name from this judicially approved notice (First Ordering paragraph and Amended Appendix A). These provisions are erroneous and contrary to law because they include provisions in the notice

- 1 -

form that will mislead and confuse potential plaintiffs and that are in deviation from the notice form approved by the Federal Judicial Commission.

Consent Form

3.      Restricted the scope of the opt-in solely to assert a claim under the FLSA for time worked through or during an unpaid meal break (First Ordering paragraph and Appendix D).  It is erroneous and contrary to the plain meaning of the FLSA to only allow individuals to join one claim of the action and will frustrate the purpose of the FLSA and collective actions because it will result in prejudice to the plaintiffs and constitute a waste of judicial and party resources in that it could result in separate and additional lawsuits being filed.

## PRELIMINARY STATEMENT

The Decision and Order of the Magistrate directs a sweeping and broad prohibition on ethical, non-misleading and non-coercive communications between plaintiffs and prospective plaintiffs in this Fair Labor Standards Act ("FLSA") collective action.  The United States Supreme Court has explicitly and repeatedly held that such restrictions are impermissible under the First Amendment and furthermore, that such restrictions cannot be imposed under a court's discretionary authority to manage class actions.  Indeed, the order undermines the collective action process by hindering, rather than facilitating, the notice process and further hinders the class representatives from investigating the merits of the case. As such, that portion of the Magistrate's Order should be set aside.

Those portions of the Magistrate's Order that *sua sponte* revised the Notice Form should also be set aside as clearly erroneous and contrary to law.  The Magistrate's revisions are in deviation from the form notice approved by the Federal Judicial Center, were not

requested by either party and will result in prejudicial confusion to the potential plaintiffs. They therefore frustrate the goal of providing timely and accurate notice to the prospective class members so that they may make an informed decision about whether to participate.

Those portions of the order that allow for only a partial opt-in by the prospective class members should be set aside. They are contrary to the plain meaning of the FLSA, will result in a waste of judicial and party resources and are completely unnecessary because no prejudice results from allowing the proper complete opt-in; further notices on additional claims would still be required to the extent the potential class members under the remaining claims expand beyond the class members already identified.

Finally, as the Magistrate aptly points out in making other revisions to the Notice Form, the statute of limitations continues to run on plaintiffs who have yet to join this case, and their claims are thus dying with each passing day. Therefore, plaintiffs also request expedited briefing on this appeal and/or a tolling of the statute of limitations until this appeal is decided.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Introduction*

Dawn Hamelin, Rakiesha Griffin and Julie Flint (referred to herein as "Named Plaintiffs") along with 89 other current and former employees have filed this action as a collective action under the FLSA, 29 U.S.C. § 216(b) and as a class action for violations of the New York State Labor Law ("Labor Law") for failure to pay wages and overtime and under the Employee Retirement Income Security Act of 1974 "ERISA" 29 U.S.C. § 1001 *et seq.*

The complaint seeks to recover on behalf of those hourly employees denied compensation by operation of, among other things, defendants' policy which automatically deducts time from employees' paychecks for a meal break (the "Break Deduction Policy"), even though those employees are performing compensable work for defendants during that break time. The complaint also contains causes of action for violations arising out of, among other things, defendants' failure to pay for training time and defendants' policy of rounding down compensable work time.

**Procedural History**

Based on the evidence uncovered by the investigation of plaintiffs' claims, plaintiffs filed a motion on December 4, 2008 for conditional certification of a proposed class and the issuance of court authorized notice, pursuant to § 216(b) of the FLSA, to all employees affected by the Break Deduction Policy. On January 26, 2009, Judge Peebles granted in part the motion for notice and directed the parties "to confer with an eye toward jointly presenting to the court a notice to be sent to potential plaintiffs." *Hamelin v. Faxton-St. Luke's Healthcare*, No. 6:08-CV-1219, 2009 WL 211512, at *11 (N.D.N.Y. Jan. 26, 2009). Thereafter, the parties promptly engaged in extensive negotiations and on February 13, 2009 advised the Court that they had agreed upon a proposed notice, which was based largely on the sample notice approved by the Federal Judicial Center. The parties also agreed on the information sheet and the envelope format. The parties advised that they were not able to agree to the contents of the consent form the employees would sign to opt into the case. *See* Docket Nos. 75, 79. The disagreement with respect to the consent form at issue in this Appeal relates to whether plaintiffs should opt into the action for all purposes or just for the one claim concerning the Break Deduction Policy. *See* Docket No. 77.

In addition, on February 26, 2009, defendants submitted a letter request for a conference to address their request for an order prohibiting plaintiffs' counsel from initiating communications during the opt-in period with individuals being sent the notice documents. *See* Docket No. 80. By letter dated March 3, 2009, plaintiffs objected to any order imposing a prior restraint on plaintiffs' counsel's right to communicate with potential class members, and alerted the court that any such restrictions could only be imposed after defendants filed a motion for such relief and after a hearing and findings of abusive communications. *See* Docket No. 81. On March 4, 2009, a court conference was conducted via telephone and the parties stated their positions for the court on the issue of restrictions on communications. *See* Docket Entry for 3/04/09 and transcript of conference attached as Exhibit H to the Designation of the Contents of the Record on Appeal. At the conference, Judge Peebles directed supplemental briefing on the communication issue, pursuant to which the parties filed supplemental letter briefs. *See* Docket Nos. 82, 83. On March 16, 2009, after only the letter arguments and a brief telephone conference, and without holding any hearing or making any findings, Judge Peebles issued a Decision and Order that, among other things, prohibited nearly all communications between plaintiffs and prospective plaintiffs during the opt-in period, *sua sponte* revised the previously agreed-upon Notice Form, and revised the consent form. For the reasons that follow, certain provisions of the Magistrate's Order should be set aside.

**ARGUMENT AND BASIS FOR OBJECTIONS**

I.      **LEGAL STANDARD FOR REVIEW.**

Orders of magistrate judges are subject to review by the district court. "The district judge in the case must consider timely objections and modify or set aside any part of the

order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "Clear error may be found 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Marriott v. County of Montgomery*, 227 F.R.D. 159, 170 (N.D.N.Y. 2005) (Hurd, J.).

Here, the Magistrate's order prohibiting most communications between plaintiffs and prospective plaintiffs exceeds the Court's case management authority and is in clear violation of plaintiffs' well-established First Amendment rights. It will unnecessarily and prejudicially prevent class members from knowing about the lawsuit and making informed decisions about whether to participate. Similarly, the revisions to the agreed-upon Notice Form contain misleading statements that will likewise prevent class members from making an informed decision. Finally, allowing plaintiffs to only partially opt-in to the action is contrary to law and to the purposes of a collective action.

## II. THE MAGISTRATE ERRED IN COMPLETELY PROHIBITING NON-COERCIVE, NON-MISLEADING COMMUNICATIONS BETWEEN PLAINTIFFS AND THEIR COUNSEL AND PROSPECTIVE CLASS MEMBERS

The issue presented for review is whether a court may prohibit a plaintiff or plaintiff's counsel from engaging in ethical, non-coercive and non-misleading communications with prospective plaintiffs in a class or collective action. The answer is a resounding and well-established no.

A. *Plaintiffs' counsel has a First Amendment right to communicate with party plaintiffs and potential party plaintiffs.*

It is well established that plaintiffs' and their counsel's right to communicate with putative class members is constitutionally protected speech. *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466 (1988); *Bernhardi v. Lowe's Co., Inc.*, No. 03-CV-6372, Docket No. 431 (W.D.N.Y.

Apr. 11, 2005). The protections originate in the long line of Supreme Court cases that repeatedly and explicitly hold that truthful, non-deceptive lawyer solicitations are protected by the First Amendment. *See Shapero,* 486 U.S. 466; *Zauderer v. Office of Disciplinary Counsel of the Sup. Ct. of Ohio,* 471 U.S. 626, 643 (1985); *Bates v. State Bar of Ariz.,* 433 U.S. 350, 364 (1977); *In re R.M.J.,* 455 U.S. 191, 199 (1982).

In *Shapero*, the Supreme Court examined whether a truthful and nondeceptive lawyer solicitation in the form of a letter targeted to potential clients known to face particular legal problems could be prohibited by the State. The Court held that a total ban on that mode of protected commercial speech was not justified merely because targeted, direct-mail solicitation presents lawyers with opportunities for isolated abuses or mistakes. Thus, *Shapero* expressly protected truthful and nondeceptive lawyer solicitations and limited the State's authority to dictate what information an attorney may convey in soliciting legal business.

In *Bates*, the Supreme Court analyzed whether the Arizona State Bar could impose sanctions against attorneys based on a newspaper advertisement offering "legal services at very reasonable fees." The Court held that the attorneys' advertisement was not misleading and therefore was commercial speech protected under the First Amendment. According to *Bates*, advertising by attorneys may not be subject to blanket suppression because such advertisements are not inherently misleading, nor is offering routine legal services at a fixed rate.

In *Zauderer*, the Supreme Court examined whether the State may discipline attorneys for their use of print advertisements containing truthful and nondeceptive information relevant to persons with specific legal problems. The Court held that this was commercial speech entitled to First Amendment protection, the suppression of which could not be

justified by unsupported assertions that the public would be misled or confused.  Therefore, a State may not prohibit attorney solicitations containing truthful and nondeceptive information and advice pertaining to potential clients.

This long line of well-established precedent has been followed by numerous federal courts including this court.  *See Alexander v. Cahill*, No. 5:07-CV-117 (FJS/GHL), 2007 WL 2120024, at *6-7 (N.D.N.Y. July 23, 2007) (striking disciplinary rules restricting attorney advertising where no showing of complaints or problems with misleading attorney advertising); *see also Ficker v. Curran*, 119 F.3d 1150 (4th Cir. 1997) (upholding attorneys' rights under the First Amendment to send truthful and nondeceptive direct-mail solicitations to traffic and criminal defendants); *Revo v. Disciplinary Bd. of the Sup. Ct. for the State of N.M.*, 106 F.3d 929 (10th Cir. 1997) (declaring that outright ban on attorney direct mail solicitation to personal injury victims is unconstitutional under the First Amendment).

Concerns regarding restrictions on communications are heightened when the communications are between plaintiffs' counsel and putative class members in class and collective actions.  *See Gulf Oil Co.*, 452 U.S. 89;[1] *Bernhardi,* No. 03-CV-6372, Docket No. 431 (W.D.N.Y. Apr. 11, 2005) ("An attorney representing a plaintiff in a collective action has a constitutionally protected right to communicate with plaintiffs.").

In *Gulf Oil*, although the Supreme Court noted the broad authority of a district court to exercise control over a class action, it specifically stated that "this discretion is not unlimited and indeed is bounded by the relevant provisions of the Federal Rules."  *Gulf Oil Co.*, 452 U.S. at  100.  To that end, the Supreme Court stated that, if a court decides to limit

---

[1]    Although *Gulf Oil* addressed restrictions on communications in the context of a Rule 23 class action, the same concerns apply to collective actions brought pursuant to Section 216(b) of the FLSA.  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *Bernhardi,* No. 03-CV-6372, Docket No. 431 (W.D.N.Y. Apr. 11, 2005)

contact between parties or their counsel and potential class members, it should issue "a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102. The Court further explained that any restrictions on such communications could not be imposed "'without a specific record showing by the moving party of the particular abuses'" alleged to be frustrating the policy behind class actions. *Id*. In other words, non abusive, i.e., non-misleading, non-coercive and ethical communications, can never be restricted. In addition, "the mere possibility of abuses [in class action litigation] does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the [rules governing class actions]. *Id*. at 104. Those requirements were imposed to "ensure that the court is furthering rather than hindering the policies embodied in the Federal Rules of Civil Procedure [governing class actions]." *Id*. at 101-102.

     B. *The policies behind the collective action vehicle further support why communication should be permitted*.

The court's role in furthering the policies behind collective actions under Section 216(b) of the FLSA was at issue in *Hoffmann-La Roche Inc.,* 493 U.S. at 171.[2] *Hoffmann-La Roche* involved an age discrimination case brought under the collective action provision of the FLSA. Plaintiff and plaintiff's counsel had obtained consents from over 400 individuals to opt into the action but, to ensure that all potential plaintiffs would receive notice of the suit, moved for discovery of the names and addresses of all similarly situated employees. They also requested that the court send notice to all potential plaintiffs who had not yet filed

---

[2]    Although *Hoffman-LaRoche* addressed representative actions in the context of an Age Discrimination in Employment Act lawsuit, the Supreme Court's § 216(b) analysis is equally applicable to representative actions arising under the FLSA. *Hoffman-LaRoche*, 493 U.S. at 167-68 (1989); *see De Ascencio v. Tyson Foods*, 130 F.Supp.2d 660, 662 n.1 (E.D. Pa. 2001).

consents. The District Court granted the request for names and addresses and issued a court-authorized notice form for issuance by plaintiffs. The Court of Appeals and Supreme Court both affirmed the District Court's assistance in issuing notice.

The Supreme Court concluded that the very benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate," and therefore allowed district courts discretion to facilitate that notice. *Hoffmann-La Roche Inc.*, 493 U.S. at 170. Notably, although *Hoffmann-La Roche* expanded the court's power to facilitate notice, it did nothing to abrogate plaintiffs' counsel's role - indeed obligation - to also have ethical and non-misleading communications with class members. In fact, in *Hoffmann-La Roche*, the Supreme Court specifically acknowledged that communications with potential plaintiffs by counsel would co-exist with court authorized notice, and suggested that such communications could only run afoul of court authorized notice if they were in conflict with the court authorized notice. *See Id*. at 171 n. 2.

More significantly, *Hoffmann-La Roche* did not alter the requirements, set forth in *Gulf Oil*, necessary for imposing any restrictions on communications between plaintiffs and their counsel and potential plaintiffs in class or collective actions. That is, any order limiting such communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.,* 452 U.S. at 101.

C. *The Magistrate's Order subverts the goal of the FLSA's collective action provision, and infringes on constitutionally protected speech.*

In light of the above, the Magistrate's order here simply cannot stand. Paragraph "a)" of the Third Ordering paragraph provides as follows:

"3.  Communications with potential opt-in plaintiffs are restricted as follows: a) other than the court-authorized notice neither plaintiffs […] as well as their respective counsel and/or agents, and/or employees, shall initiate any direct, unsolicited contact with potential opt-in plaintiffs for the purpose of discussing this action"

Decision and Order at p. 18.

This order constitutes a complete ban on communications - including non-coercive, non-misleading communications.  There is no question that such a sweeping prohibition violates plaintiffs' and plaintiffs' counsels' right to truthful, non-misleading communications with prospective plaintiffs, including counsels' right to ensure that notice is received and to investigate the merits of the action and individuals' claims.  Clearly, the prohibitions interfere with the formation of the class and the prosecution of the class action contrary to the holding in *Hoffmann-La Roche*, which was intended to allow the court to facilitate notice, not hinder notice.  Indeed, no one could argue that ensuring timely and accurate notice is of crucial importance to the collective action process and the broad remedial goal of the FLSA.[3]  That the court conditionally certified a class and authorized notice does not prevent plaintiffs and plaintiffs' counsel from continuing their efforts to also ensure notice of the lawsuit through non-misleading, non-coercive communications that do not conflict with the court's notice.

In fact, FLSA cases command special sensitivity to the concern for apprising individuals of their legal rights because members do not join the class and stop the statute of limitations from running until they receive notice and opt-in; as such, their claims are "dying

---

[3]      We note too that, by restricting plaintiffs' ability to notify potential class members of the lawsuit, the court is frustrating the "legitimate goal of avoiding a multiplicity of duplicative suits." *Hoffmann-La Roche Inc.*, 493 U.S. at 172.  The inefficiency is not only present respect to other individual suits but also with respect to another collective action.  *See Yates v. Wal-Mart Stores, Inc.*, 58 F.Supp.2d 1217, 1218 (D. Colo. 1999) (allowing second collective action with identical issues to the first, noting that nothing in the language of the FLSA would suggest a Congressional intent to absolutely preclude FLSA claims by those who receive notice of a collective action, but fail timely to opt-in).

daily." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260(S.D.N.Y. 1997). *See also* 29 U.S.C. §216(b). For this reason, courts in FLSA actions do not prohibit class counsel's private communications with potential class members in opt-in cases even where the contact is in addition to a court-ordered notice process. "Once an action has been commenced under the FLSA…the court's authority does not include the power to forbid sending notice." 7-B WRIGHT & MILLER,§ 1807. As courts have held:

> Two things are…evident [under the FLSA]. * * * [Section] 216(b) does not require parties to obtain judicial approval before seeking to locate other "similarly situated" persons … it is not the court's role to prohibit plaintiffs from attempting to gather these consents. [And] the act does not prohibit judicial involvement; the court may assist the plaintiffs in giving notice, as long as that assistance is appropriate.

*Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 421 (M.D. Ala. 1991); *see also Cranney v. Carriage Servs., Inc., No. 2:07-cv-1587-RLH PAL*, 2008 WL 2457912, at *5 (D. Nev. June 16, 2008) (plaintiffs' counsel's contact with putative class members during notice period found to be important and necessary to plaintiff's representation of class); *Parks v. Eastwood Ins. Servs. Inc.,* 235 F.Supp.2d 1082 (C.D. Cal. 2002); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 131 (E.D.N.Y. 1988) ("[W]hile it is clear that the Court may *compel* class notice in an appropriate case, no authority has been cited that requires prior *authorization* of the Court for such notice.") (emphasis in original); *Piper v. RGIS Inventory Specialists, Inc.*, No. C-07-00032 (JCS), 2007 WL 1690887, at *8 (N.D. Cal. June 11, 2007) (same); *Shivers v. Metro. Atlanta Rapid Transit Auth.*, No. C85-4519, 1986 WL 15379, at *4 (N.D. Ga. 1986) (union has right to inform members about FLSA litigation).

To be clear, plaintiffs are not claiming that the Court cannot impose any restrictions on communications; the Court can obviously prohibit unethical communications, deceptive

as well as coercive ones.  The sweeping ban here, however, limits all communications and should thus be set aside.

Paragraph "b)" of the Third Ordering paragraph provides as follows:

"3.  Communications with potential opt-in plaintiffs are restricted as follows:

* * *

b) Plaintiffs or their agents may communicate with a potential opt-in plaintiff when the communication is initiated by such potential opt-in plaintiff, except that during such communication neither plaintiffs nor their counsel shall actively solicit the potential opt-in plaintiff to join this action, make any statements conflicting with the court-authorized notice, or make misleading statements regarding the status or merits of the litigation"

Decision and Order at p. 18.

Here, plaintiffs do not object to the restrictions prohibiting statements conflicting with the court-authorized notice or misleading statements.  Indeed, neither plaintiffs nor their counsel intend to make any such statements.[4]  However, the Court's additional restriction prohibiting plaintiffs' counsel from "actively soliciting" the potential opt-in plaintiff to join this action violates plaintiffs' counsel's right to non-misleading and non-coercive communications as well as its obligation to counsel and advise prospective clients seeking such advice.

There is no doubt that prospective class members, calling in response to the notice, will be seeking additional information and advice concerning the very important decision whether to opt into the action, yet the Court's order prevents plaintiffs' counsel from speaking to them on the very issue for which they call.  Suffice it to say that the restriction will "unquestionably" create, at the very least, potential difficulties for plaintiffs and their

---

[4]     In this regard, we note that plaintiffs' counsel outlined and recognized its obligations in communicating with prospective plaintiffs in its March 6, 2009 correspondence to the court. *See* Docket No. 83, p. 2.

counsel in seeking to vindicate the rights of the class. *Gulf Oil*, 452 U.S. at 101. Again, the Court's ban is a complete ban on solicitation (assuming that plaintiffs could even be soliciting when a potential opt-in initiates the contact), and is not limited to misleading or coercive statements. As such, it violates plaintiffs' and their counsels' First Amendment rights as well as counsel's right to advise clients, and should thus be set aside.

Paragraphs "c)" and "d)" of the Third Ordering paragraph provide as follows:

"3. Communications with potential opt-in plaintiffs are restricted as follows:

* * *

"c) in the event that plaintiffs' counsel receives a returned notice resulting from an incorrect or insufficient address or other mail delivery issue, if plaintiffs' counsel desires to attempt direct contact with such potential opt-in plaintiff, counsel shall immediately notify defendants' counsel of the fact of the returned mail as well as the intent to make such direct contact, before the direct contact is attempted, in an effort to reach agreement regarding the manner in which efforts are to be made to locate the individual.

d) If such direct contact is attempted by plaintiffs' counsel as authorized in paragraph (c) above, it shall be limited to the purpose of advising the potential opt-in plaintiff of the attempt to provide the court-authorized notice and obtaining information from the potential opt-in plaintiff that will permit plaintiffs to provide such notice. During such communication, neither plaintiffs nor their counsel shall solicit the potential opt-in plaintiff to join this action, make any statements conflicting with the court-authorized, or make any misleading statements regarding the status or merits of the litigation"

Decision and Order at p. 18.

Again, because plaintiffs and their counsel do not seek or intend to make any statements conflicting with the court-authorized notice, or make any misleading statements regarding the status or merits of the litigation, we do not object to those provisions of the order. However, in the event plaintiffs' counsel contacts a prospective plaintiff who did not receive the court-authorized notice, for all the reasons stated above, that communication cannot be limited to simply advising of the notice and requesting additional contact

information to send the notice out – essentially preventing counsel from responding to any additional questions that the prospective plaintiff will undoubtedly have before providing updated contact information.

Moreover, to the extent that a court may limit contact between parties or their counsel and potential class members, it may only do so after a specific record showing by the moving party of the particular abuses alleged to be frustrating the policy behind class actions. *Gulf Oil Co.,* 452 U.S. at 102.  Here, there were not even any allegations of any misleading, abusive or conflicting communications, let alone a specific record showing.  Thus, the Magistrate made no factual findings at all, let alone findings of any abusive communications.  Rather, it is clear that the restrictions imposed are designed solely for the purpose of preventing the mere possibility (that exists in every case) of misleading and abusive communications.  *Gulf Oil* specifically states that the court simply cannot adopt a ban that interferes with the formation of a class or the prosecution of a class action solely to prevent the possibility of abusive communications.  *Gulf Oil Co.,* 452 U.S. at 102-03.  Thus, the objectionable provisions should set aside.

None of the cases relied upon by the Magistrate or cited by opposing counsel warrant upholding the Magistrate's decision.  For example, to the degree the Magistrate finds support in *Ruggles v. Wellpoint, Inc.* for its restriction of plaintiffs' counsel's communication with class members, *Ruggles* is in direct conflict with the majority position, including that of the Supreme Court, that such communication is constitutionally protected.  2008 WL 4866053, *3 (N.D.N.Y. Nov. 6, 2008).   In the un-appealed Magistrate decision, the court erroneously disregarded *Gulf Oil's* holding that a court may not limit communications "without a specific record showing by the moving party of the particular abuses by which it is threatened."  453

U.S. at 102. The *Ruggles* court disregarded *Gulf Oil* by failing to hold an evidentiary hearing or make any specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. *Ruggles*, 2008 WL 4866053, *3. Indeed, *Ruggles* had made *no* finding that plaintiffs' prior communications were not constitutionally protected, and thus incorrectly restricted communications without any justifiable basis. *Id.* at *10. Thus, as *Ruggles* failed to exercise due caution in restricting communication, as mandated by the Supreme Court, it was erroneously decided, and improperly relied on by the Magistrate Judge in this case.

Further, *Ruggles* is factually and procedurally distinguishable as the defendants there were claiming already to be harmed and seeking to prevent *any further* inappropriate and unauthorized communications. In this case, defendants have not made any such allegations. Furthermore, the opt-in period in *Ruggles* was 270 days whereas the court here has set a relatively short notice period of 60 days. Hence, there is a greater need here to use means other than mailing to ensure receipt of notice.

In *Barnwell v. Corrections Corp. of Am.*, the plaintiffs agreed to only use phone numbers in the event notices were retuned as undeliverable, and the restrictions on reminder cards were imposed pursuant to a local ethical rule. 2008 U.S. Dist. LEXIS 104230, *26-27 (D. Kan. Dec. 9, 2008). Similarly, the restrictions in *Hipp v. Liberty Nat. Life Ins. Co.* appeared to stem from a now expired local rule prohibiting the issuance of notice without the Courts' approval. 164 F.R.D. 574, 575-76 (M.D. Fla. 1996). Finally, although the court in *Lima v. Int'l Catastrophe Solutions, Inc.*, citing *Hipp*, imposed certain restrictions on communications, it also allowed communications much broader than those allowed in the case at bar. 493 F.Supp. 2d 793, 801-02 (E.D. La. 2007).

**III.   MAGISTRATE'S *SUA SPONTE* REVISIONS TO THE NOTICE FORM ARE CLEARLY ERRONOUS**

In revising the notice—which had been agreed upon by the parties—the Magistrate Judge erred.  Specifically, three revisions will prejudice plaintiffs' ability to make an informed decision on whether to join the lawsuit, because the revised notice now contains inaccurate and misleading information.  Those revisions include, (1) the addition of language in the notice form advising potential plaintiffs that, if they decide to join the lawsuit, they may be liable for costs associated with the lawsuit as well as damages for counterclaims; (2) the exclusion of language advising that attorney's fees may be paid separately from any award in the action and stating only that plaintiffs' attorneys will receive part of any settlement or judgment; and (3) replacement of the Court's name at the top of page 1 with the language "Notice of Lawsuit with Opportunity to Join."

The Magistrate Judge made these revisions despite the fact that the notice was modeled upon the sample notice form provided by the Federal Judicial Center ("FJC").  The FJC is the education and research agency for the federal courts that was established by Congress in 1967, on the recommendation of the Judicial Conference of the United States.  *See* FJC website, http://www.fjc.gov/public/home.nsf (last visited Feb. 18, 2009).  The FJC was requested to develop illustrative notices of proposed class action certifications and settlements by the Subcommittee on Class Actions of the U.S. Judicial Branch's Advisory Committee on the Federal Rules.

In order to develop illustrative notices, the FJC engaged in a careful study of the use of plain language in legal documents.  After obtaining recommendations from a lawyer with a Ph.D. in linguistics and using multiple rounds of focus groups, testing and re-drafting to refine the notice to provide maximum comprehension for individuals reading the notice, the

FJC finally posted, and re-posted, its illustrative notices for use by courts and attorneys. *Id.* As a result of this comprehensive research and analysis, the FJC's illustrative notices are recognized as the leading models for notice in class actions – the gold standard. *See Pierce v. Novastar Mortgage, Inc.,* No. C-05-5835 RJB, 2007 WL 505670, *3 (W.D. Wash. Feb. 12, 2007); *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 224 (D.N.J. 2005); *In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F.Supp.2d 180, 185 (S.D.N.Y. 2003).

The Magistrate Judge revisions' also conflict with numerous courts' holdings concerning the importance of providing accurate information in FLSA notices, particularly with respect to costs and attorneys' fees. As to the issue of including language regarding costs and attorneys' fees in the notice, courts have determined that such language is misleading and should thus not be included in the notice. For example, in *Gerlach v. Wells Fargo & Co.,* the court held that any language "regarding Defendants' obtaining 'an award of costs to be paid by the individual Plaintiffs,'" was misleading without at least defining what those costs might be and clearly indicating that plaintiffs will not bear the burden of paying defendants' attorneys' fees should defendants prevail. 2006 WL 824652, *4 (N.D.Cal. 2006); *see also Aguilar v. Complete Landsculpture, Inc.,* 2004 WL 2293842, *5 (N.D.Tex. Oct. 7, 2004) (rejecting provision that plaintiffs who join may be required to pay attorney's fees and costs if the suit is unsuccessful); *Agdipa v. Grant Joint Union High School District,* 2007 WL 1106099, *2 (E.D.Cal. Apr. 10, 2007) (same). The courts' inclusion of language that plaintiffs may be liable for costs associated with the lawsuit is also entirely misleading as the plaintiffs in this case will *not* be responsible for such costs. As permitted by 22 NYCRR § 1200.22, plaintiffs'

counsel will advance all court costs and expenses of litigation, such that party-plaintiffs will not need to bear that burden.[5]

Additionally, the inclusion of language concerning potential liability for costs and damages on counterclaims is misleading and inaccurate. As a fundamental point, courts generally do not even permit counterclaims against individual plaintiffs for money claimed to be owed to a defendant, or for other tortious conduct. As noted by the Tenth Circuit in an instance where such a counterclaim was brought,

> [T]he purpose of the present action is to bring [the defendant] into compliance with the Act by enforcing a public right. To permit him in such a proceeding to try his private claims, real or imagined, against his employees would delay and subvert the whole process. [The defendant] is free to sue his employees in state court…for any sum which he feels is due and owing him.

*Donovan v. Pointon*, 717 F.2d 1320, 123 (10th Cir. 1983). *See also Hodgson v. Lakewood Broadcasting Service, Inc.*, 330 F. Supp. 670 (D. Colo. 1971).

As to the inclusion of the court's name at the top of the notice, courts routinely order it. Indeed, the very point of *Hoffmann-La Roche* was to allow the court to help ensure accurate and timely notice concerning the pendency of the collective action. Although the court must take care to avoid the appearance of judicial endorsement of the merits of the action, it is customary that the court's name or the case caption, appear at the beginning of the notice. Otherwise, the notice would be indistinguishable from numerous pieces of junk mail and mail solicitations. As noted in a case cited by the Magistrate, notices typically include such a header. *Adams v. Inter-Con Sec. Systems, Inc.* 242 F.R.D. 530, 540 (N.D.Cal. 2007).

Thus, given the direction provided by numerous courts and the FJC, advising against the inclusion of language like that ordered by Magistrate Judge, plaintiffs respectfully urge

---

[5] Effective April 1, 2009, this rule will be codified as Code of Prof. Resp., Rule 1.8.

this Court to hold that his sua sponte revisions were clear error. It is entirely inappropriate to include language concerning plaintiffs' potential responsibility for costs given plaintiffs counsel's decision to advance all litigation costs in this case. Further, defendants did not even request this revision. It is equally inappropriate to include language concerning potential liability for counterclaims given that courts generally do not permit such claims. Notably, consistent with the courts, the FJC notice does not contain any language advising potential plaintiffs that they may be liable for costs and certainly contains no language advising of potential liability for damages on counterclaims. *See* FJC website, http://www.fjc.gov/public/home.nsf (last visited Feb. 18, 2009). Indeed inclusion of such language is completely unnecessary as defendants have already filed their Answer in this case and have not asserted a counterclaim, nor ever stated an intention to do so. Further, given that the Magistrate has also prohibited plaintiffs' counsel from communicating with the prospective plaintiffs, the inclusion of such inaccurate information would certainly impede potential plaintiffs' ability to have accurate information about participation in the lawsuit.

Additionally, as to the issue of attorneys' fees, the original agreed-upon notice in this case included language accurately indicating that fees would *either* be deducted from any money obtained in a settlement or judgment *or* paid separately by defendants. With no explanation, the Magistrate removed such language and instead replaced it with language indicating that any attorney's fees *will* be taken from a settlement or judgment. This statement is both inaccurate and misleading and will further prejudice plaintiff's ability to make an informed decision on whether to join the lawsuit.

For all of these reasons, the originally agreed upon language should be restored to the notice.

## IV.    THE MAGISTRATE ERRED IN ORDERING A PARTIAL OPT-IN

As noted above, the Magistrate restricted the scope of the opt-in solely to assert a claim under the FLSA for time worked through or during an unpaid meal break.  *See* Decision and Order, Appendix D.   The FLSA explicitly provides, "No employee shall be a party plaintiff to any such *action* unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."   29 U.S.C. § 216(b) (emphasis added).   Thus, once an employee gives his consent in writing, by virtue of the statute, he necessarily becomes a party to the *action*.

Courts have enforced the statute's intended result.  For example, directly on point is the Eleventh Circuit explanation:

> We are bound by the intent of Congress, as expressed in the language of the statute. The statute says, '[n]o employee shall be a party plaintiff to any such *action* unless he give his consent in writing to become such a party….'  29 U.S.C. § 216(b) (emphasis added).  That plain language indicates that plaintiffs do not opt-in or consent to join an action as to specific claims, but as to the action as a whole.  The statute does not indicate that opt-in plaintiffs have a lesser status than named plaintiffs insofar as additional claims are concerned.   To the contrary, by referring to them as 'party plaintiff[s]' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs.

*Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003); *see Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 90 (S.D.N.Y. 2001) ("Section 216(b) gives [opt-in plaintiffs] the status of parties and, as parties, they should have the same rights as the named Plaintiffs to have all their related claims adjudicated in the same forum.")

The statute's requirement is necessary and practical for several reasons.  First, in the event that the opt-ins are not deemed to have asserted all of the claims in the action, each opt-in would then need to file a separate lawsuit to protect any rights pertaining to any of the additional claims.  That means that likely hundreds of additional lawsuits would have to be

filed for those employees to protect their rights.  The efficiency gained by a collective action would surely be obliterated by the need for each individual to also have to file their own separate lawsuit, not to mention the congestion and loss of judicial economy such a result would cause for the courts.

Second, a partial opt-in requires the plaintiffs to file multiple consent forms in this action.  For each claim, each plaintiff would have to file a separate consent and the tolling of the statute of limitations would then be different for each additional claim.  If a plaintiff who received notice because he or she was subject to an automatic meal deduction policy also happens to have been subject to another violation, there is simply no reason to limit that person's participation to the reason they received notice.  Allowing an individual to opt into the action as a whole, does not remove the necessity for certifying additional subclasses or proving their claims.  It thus makes little sense to impose such a requirement.

Third, one of the benefits of the collective action is to adjudicate the claims for all of the opt-in plaintiffs together – i.e., all of their claims rise and fall together.  The partial opt-in requirement turns this upside down, with any adjudication of the claims not necessarily applying to all of the opt-in plaintiffs but only those who had specifically opted into the specific claim.  The individuals who have already opted in to the case, have joined to have their rights vindicated for *all* of the claims raised in this case, not only the meal break claims. This should thus continue, moving forward.  To the degree that certain claims will apply to only certain individuals, such issues can be sorted out later in the litigation, through the use of subclasses.  At this juncture, it is however not appropriate to limit the claims that individuals may assert.

The Magistrate's partial opt-in order runs contrary to the explicit statutory language, the case law interpreting the statute and practical sense, and should therefore be set aside.

## V.     AN EXPEDITED HEARING IS NECESSARY TO PRESERVE THE CLAIMS OF THE PROSPECTIVE PLAINTIFFS

Time is of the essence in FLSA cases.  Expedited notice is essential because an injured employee's claims under the FLSA "die daily" until she opts into the action.  *Hoffman,*982 F. Supp. at 260.  Unlike Federal Rule of Civil Procedure ("Rule") 23, which automatically deems all putative plaintiffs to be parties to the action, hence tolling the statute of limitations, the FLSA has its own "collective action" procedure.   Under the FLSA's procedures, "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).

Therefore, until a party affirmatively joins the action in writing, the statute of limitations continues to run.   *Hoffman*, 982 F. Supp. at 260 ("Thus, under the FLSA, potential plaintiffs must 'opt in' to a collective action to be bound by the judgment (and to benefit from it).  Moreover, only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled.") (Sotomayor, J.); *King v. Carey*, 405 F. Supp. 41, 44 (W.D.N.Y. 1975) ("the statute of limitations continues to run for those employees who have not given their consent to being plaintiffs in a [FLSA] suit").  Once a plaintiff opts in, her recovery will run back only two[6] years from the date of the opt-in, not two years back from the commencement of the original suit.  *Id.*  Therefore, a plaintiff's lack of knowledge about an FLSA action is doubly damaging: first, if unaware of the suit, she cannot opt in to protect her interests in the litigation, and second, the longer the employee waits to join, the more

---

[6]       Or three years if the violation is found to be willful.

recovery she loses. For those individuals whose employment ended more than two (or three) years ago, their claims are daily being extinguished in their entirety because they did not receive notice in the statute's limitation period about their ability to recover.

Thus, it is imperative that notice be issued as soon as possible. Literally every day matters. Therefore, it is important to the prospective plaintiffs that Plaintiffs' Objections To The Decision and Order of the Magistrate Judge be heard as soon as practicable to allow the process to move forward as rapidly as possible.

## CONCLUSION

For the forgoing reasons and the reasons set forth in plaintiffs' initial papers, plaintiffs respectfully request that this Court grant plaintiffs' objections and set aside those portions of the Magistrate's Order outlined above.

Dated: March 30, 2009

**DOLIN, THOMAS & SOLOMON LLP**

By:  s/ Patrick J. Solomon
Patrick J. Solomon, Esq.
J. Nelson Thomas, Esq.
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
psolomon@theemploymentattorneys.com
nthomas@theemploymentattorneys.com
