UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DAWN HAMELIN, RAKIESHA GRIFFIN and JULIE FLINT, on
behalf of themselves and all other employees similarly situated,

Plaintiffs,

    v.

FAXTON-ST. LUKE'S HEALTHCARE, FAXTON SUNSET-ST.
LUKE'S HEALTH CARE CENTER, INC., KEITH A.
FENSTEMACHER, ANTHONY SCIBELLI, FAXTON NURSES
ALUMNI ASSOCIATION, INC., FAXTON-SUNSET-ST.
LUKE'S FOUNDATION, FAXTON SUNSET-ST. LUKE'S
HEALTH RELATED FACILITY AND NURSING HOME, INC.,
MOHAWK VALLEY NETWORK, INC., HEALTHFRIENDS,
INC., HARDING NURSING HOME LLC, ST. LUKE'S HOME
RESIDENTIAL HEALTH CARE FACILITY, INC., ST. LUKE
RESIDENTIAL HEALTH CARE FACILITY, MVN
ENTERPRISES, INC., NETWORK DATA SYSTEM, LLC,
NETWORK DATA SYSTEMS, INC., SENIOR NETWORK
HEALTH, LLC, VHA EMPIRE STATE, LLC, HOSPICE &
PALLATIVE CARE, INC., CENTREX CLINICAL
LABORATORIES, INC., VISITING NURSE ASSOCIATION OF
UTICA AND ONEIDA COUNTY, MOHAWK VALLEY HOME
CARE, L.L.C., MOHAWK VALLEY HEART INSTITUTE, INC.,
FAXCHIL REALTY, INC., FAXTON LEASING, LLC,
FAXTON-ST. LUKE'S HEALTHCARE FOUNDATION,
FAXTON HOSPITAL, INC. and FAXTON-ST. LUKE'S
HEALTHCARE 401K PLAN,

Civil Action No.:
08-CV-1219
(DNH-DEP)

Defendants.

_____

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION FOR RULE 23 CLASS CERTIFICATION

BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202
Telephone:  (315) 218-8000

## <u>TABLE OF CONTENTS</u>

**Page No.**

TABLE OF AUTHORITIES ...................................................................... iii

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ....................................................................................... 2

    A.  The Faxton-St. Luke's Healthcare Defendants ....................... 2

    B.  Course of Proceedings ........................................................... 3

    C.  The Named Plaintiffs ............................................................. 7

        1.  Rakiesha Griffin ............................................................ 7

        2.  Dawn Hamelin .............................................................. 8

        3.  Julie Flint .................................................................... 8

    D.  Faxton-St. Luke's Policies .................................................... 9

        1.  The Faxton-St. Luke's Meal Break Policies ................. 9

        2.  The Faxton-St. Luke's Rounding Policy ...................... 11

        3.  The Faxton-St. Luke's Overtime Policy ...................... 12

        4.  The ERISA Claim ........................................................ 14

DISCUSSION ........................................................................................... 14

I.  PLAINTIFFS HAVE NOT MET THE REQUIREMENTS OF RULE 23(a) .................... 15

    A.  Plaintiffs have not established numerosity ............................. 15

    B.  Plaintiffs have failed to meet the commonality and typicality requirements ........................................................... 16

    C.  Plaintiffs have failed to show they will fairly and adequately represent the interests of the class .......................................... 21

II.  PLAINTIFFS HAVE NOT MET THE REQUIREMENTS OF RULE 23(b) ................ 22

    A.  A class cannot be certified under Rule 23(b)(3) ....................................................22

    B.  A class cannot be certified under Rule 23(b)(2) ....................................................29

    C.  A class cannot be certified under Rule 23(b)(1) ....................................................30

III.  THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
      JURISDICTION OVER THE PROPOSED STATE LAW CLASS CLAIMS .................32

CONCLUSION....................................................................................................................35

1689173.1

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

*Adair v. Wisconsin Bell,*
  2008 U.S. Dist. Lexis 68942 (E.D. Wis. Sept. 11, 2008) ......................................18

*Alleyne v. Time Moving & Storage Co., LLC,*
  264 F.R.D. 41 (W.D.N.Y. 2010).........................................................................26

*Aquilino v. Home Depot U.S.A.,*
  2006 U.S. Dist. LEXIS 48554 (D.N.J. July 17, 2006)..........................................34

*Babineau v. Federal Express Corp.,*
  576 F.3d 1183 (11th Cir. 2009) .........................................................................27

*Basco v. Wal-Mart Stores, Inc.,*
  216 F. Supp. 2d 592 (E.D.La. 2002) ..................................................................29

*Blackwell v. Skywest Airlines, Inc.,*
  245 F.R.D. 453 (S.D. Ca. 2007)........................................................................27

*Burkhart-Deal v. Citifinancial, Inc.,*
  2008 U.S. Dist. LEXIS 44469 (W.D. Pa June 5, 2008).........................................33

*Dauphin v. Chestnut Ridge Transportation Inc.,*
  2009 U.S. Dist. LEXIS 74483 (S.D.N.Y. Aug. 20, 2009) .....................................25

*De Asencio v. Tyson Foods, Inc.,*
  342 F.3d 301 (3d Cir. 2003)........................................................................32, 33

*De La Cruz v. Gill Corn Farms, Inc.,*
  2005 U.S. Dist. LEXIS 44675 (N.D.N.Y. Jan. 25, 2005)..................20, 23, 24, 25, 30, 32, 33

*East Texas Motor Freight System, Inc. v. Rodriguez,*
  431 U.S. 395 (1977).........................................................................................21

*East v. Bullock's, Inc.,*
  34 F. Supp. 2d 1176 (D. Ariz. 1998) ................................................................18

*Eisen v. Carlisle & Jacquelin,*
  391 F.2d 555 (2d Cir. 1968).........................................................................30, 31

*Eldred v. Comforce Corp.,*
  2010 U.S. Dist. LEXIS 18260 (N.D.N.Y. Mar. 2, 2010).......................................25

1689173.1

*Eliasen v. Green Bay & W.R.R.*,
    93 F.R.D. 408 (E.D. Wis. 1982) .................................................................................31

*Ellis v. Edward D. Jones Co.*,
    527 F. Supp. 2d 439 (W.D. Pa. 2007) .......................................................................33

*England v. Advance Auto Stores Co.*,
    263 F.R.D. 423 (W.D.Ky. 2009).............................................................21, 27, 28, 29

*General Telephone Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982).....................................................................................................18

*Harding v. Time Warner, Inc.*,
    2010 U.S. Dist Lexis 5896 (S.D. Cal. Jan. 26, 2010) ...............................................18

*Harper v. Yale Int'l Ins. Agency, Inc.*,
    2004 U.S. Dist. LEXIS 8476 (N.D. Ill. May 13, 2004) ...........................................34

*Hasken v. City of Louisville*,
    213 F.R.D. 280 (W.D. Ky. 2003).............................................................................34

*Helm v. Alderwoods Group, Inc.*,
    2009 U.S. Dist. LEXIS 123527 (N.D. Ca. Dec. 29, 2009) ......................................27

*Hilton v. Wright*,
    235 F.R.D. 40 (N.D.N.Y. 2006)...............................................................................32

*In re Dennis Greenman Securities Litigation*,
    829 F.2d 1539 (11th Cir. 1987) ................................................................................31

*In Re Initial Public Offering Securities Litigation*,
    471 F.3d 24 (2d Cir. 2006)........................................................................................14

*Ingles v. City of New York*,
    2003 U.S. Dist. LEXIS 2453 (S.D.N.Y. Feb. 20, 2003)..........................................32

*Jackson v. City of San Antonio*,
    220 F.R.D. 55 (W.D. Tex. 2003) .............................................................................34

*Mateo v. V.F. Corp.*,
    2009 U.S. Dist. LEXIS 105921 (N.D. Ca. Oct. 27, 2009)...........................20, 26, 27

*McClain v. Leona's Pizzeria, Inc.*,
    222 F.R.D. 574 (N.D. Ill. 2004)...............................................................................34

*McElmurry v. US Bank Nat'l Ass'n*,
    2005 U.S. Dist. Lexis 44452 (D. Or. July 29, 2005) ...............................................19

1689173.1

*McElmurry v. US Bank Nat'l Ass'n,*
    2005 U.S. Dist. Lexis 44451 (D. Or. Oct. 7, 2005) ............................................19

*Mendez v. Radec Corp.,*
    232 F.R.D. 78 (W.D.N.Y. 2005)............................................................................26

*Mike v. Safeco Insurance Co.,*
    223 F.R.D. 50 (D. Conn. 2004)..............................................................................24

*Molski v. Gleich,*
    318 F.3d 937 (9th Cir. 2003) .................................................................................30

*Mueller v. CBS, Inc.,*
    200 F.R.D. 227 (W.D. Pa. 2001) ...........................................................................24

*Olden v. LaFarge,*
    383 F.3d 495 (6th Cir. 2004) .................................................................................30

*Pablo v. ServiceMaster Global Holdings, Inc.,*
    2009 U.S. Dist. LEXIS 79584 (N.D. Ca. Aug. 17, 2009)......................................27

*Parker v. Time Warner Entertainment Co., L.P.,*
    331 F.3d 13 (2d Cir. 2003).....................................................................................30

*Robinson v. Metro-North Commuter Railroad Co.,*
    267 F.3d 147 (2d Cir. 2001)..............................................................................14, 30

*Robinson v. Wal-Mart Stores, Inc.,*
    253 F.R.D. 396 (S.D. Miss. 2008) .........................................................................29

*Satchell v. FedEx Corp.,*
    2005 U.S. Dist. LEXIS 37354 (N.D. Cal. Sept. 28, 2005) ....................................30

*Shady Grove Orthopedic Associates v. Allstate Insurance Co.,*
    559 U.S. ___, 130 S. Ct. 1431 (2010)....................................................................25

*Shahriar v. Smith & Wollensky Restaurant Group, Inc.,*
    08-CV-00057-MGC (S.D.N.Y.) .............................................................................33

*Thiebes v. Wal-Mart Stores, Inc.,*
    2002 U.S. Dist. LEXIS 664 (D. Or. Jan. 9, 2002) ...........................................15, 16

*Vengurlekar v. Silver Line Technologies, Ltd.,*
    220 F.R.D. 222 (S.D.N.Y. 2003) ...........................................................................30

*White v. First American Registry,*
    230 F.R.D. 365 (S.D.N.Y. 2005) ...........................................................................30

*Zelaya v. J.M. Macias, Inc.*,
    999 F. Supp. 778 (E.D.N.C. 1998)..........................................................................34

1689173.1

## PRELIMINARY STATEMENT

The Faxton-St. Luke's Healthcare defendants submit this memorandum in opposition to the motion of plaintiffs for Rule 23 class certification under the New York Labor Law and the Employee Retirement Income Security Act of 1974 ("ERISA"). The form motion submitted by plaintiffs' counsel is supported by canned affidavits that show an utter disregard for the facts. Plaintiffs' counsel suggests that employees throughout an undefined "Hospital System" are never afforded the opportunity for a meal break, and that defendants maintain policies that violate the FLSA and New York Labor Law.

Plaintiffs seek certification of four separate classes: (1) a meal break deduction class; (2) a class with respect to alleged rounding practices and "pre" and "post" shift work; (3) a class with respect to calculation of overtime rates for employees subject to shift differentials; and (4) a class for participants in the defendants' 401(k) plan, whose hours were not properly credited under the plan due to the alleged FLSA violations.

Only by ignoring the actual proof that has been produced to them in discovery to date, and by completely disregarding what has taken place in this action following the Court's preliminary certification of a collective action under the FLSA with regard to the meal break claim, can plaintiffs suggest that this action should proceed on a class basis. Indeed, plaintiffs' counsel ignores that the named plaintiffs that they sued on behalf of have all disclaimed under oath that they even have certain of the claims for which plaintiffs' counsel now seeks class certification. Plaintiffs' counsel's disregard of the facts is so great that they do not even seem to know in what city Faxton-St. Luke's is located. The motion does not meet plaintiffs' burden under Rule 23 and must be denied.

**Background**

A.     The Faxton-St. Luke's Healthcare Defendants

The complaint in this action names 27 different defendants.  The undersigned

counsel has answered on behalf of defendant Faxton-St. Luke's Healthcare, St. Luke's

Residential Healthcare Facility, Inc. ("St. Luke's Home") and 16 other defendants.  Paragraph 14

in the complaint alleges that all 27 of the named defendants are "related organizations" without

alleging any facts regarding the various defendants whatsoever, or alleging any facts regarding

their alleged relationships.[1]  The current motion, like the complaint, simply refers to

"defendants" without any attempt to distinguish among the various defendants.  Several of the

affidavits submitted in support of this motion reference a "Hospital System," but plaintiffs never

define what is meant by this term.

Defendant Faxton-St. Luke's Healthcare operates hospitals on two campuses, the

Faxton campus in Utica, New York and the St. Luke's campus in New Hartford, New York.

There are approximately 2,360 hourly employees on these two campuses.  Approximately 790 of

these employees are covered by union collective bargaining agreements.  Scibelli Declaration,

¶ 4.  As used herein, "Faxton-St. Luke's Healthcare" refers to the corporate entity that is the first

named defendant and operates these two hospitals.

The defendant St. Luke's Home employs 321 hourly employees.  Boulerice

Declaration, ¶ 3.

Although the complaint inexplicably names 25 other defendants, the three named

plaintiffs worked only for these two entities.

---

[1] Counsel for the Faxton-St. Luke's Healthcare defendants has provided a detailed affidavit to plaintiffs' counsel in support of a request that they stipulate to a dismissal the majority of the named defendants who do not employ hourly employees, but plaintiffs' counsel has declined to do so.  Fellows Declaration, ¶¶ 3-4.

1689173.1

Certain of the affidavits offered in support of this motion suggest that Faxton-St. Luke's has "Laid off Hundreds of Employees to Cut Costs" (see Affidavit of Loree Larkin Hill, ¶ 41, attached to Solomon Declaration as Exhibit U), suggesting that those alleged layoffs have resulted in the FLSA violations plaintiffs complain of.  While Ms. Larkin Hill's affidavit contains this heading, it contains no factual statements in support of it.  In fact, Faxton-St. Luke's has not had staff cutbacks. Scibelli Declaration, ¶ 21.  Nor has St. Luke's Home.  Boulerice Declaration, ¶ 4.  Ms. Larkin Hill's and several other affidavits state that the alleged staff cutbacks are "common knowledge in Syracuse."  Faxton-St. Luke's, of course, is in Utica.  Apparently, plaintiffs' counsel is just recycling affidavits from other hospital cases, as paragraph 25 of Ms. Larkin Hill's affidavit also contains suggestions of "examples" to insert in the form affidavits ("Insert as appropriate specific examples, such as:  I remember my supervisor telling me that working through meal break went with the job . . .").

B.   Course of Proceedings

This action was commenced by the filing of a complaint on November 13, 2008. The complaint names three plaintiffs, Dawn Hamelin, Rakiesha Griffin and Julie Flint.  Shortly after filing the complaint, plaintiffs moved for conditional certification of a collective action under the FLSA.  While the application for a collective action under the FLSA was pending, 228 plaintiffs opted in by filing consents to become a plaintiff.  Incredibly, however, many of the consents were for plaintiffs who were not eligible to participate in the collective action as proposed by plaintiffs' own counsel because they had not worked in the prior three years for the defendants.

3

On January 26, 2009, Magistrate Judge Peebles issued a decision and order granting the request for preliminary certification as a collective action under the FLSA for the following plaintiff class:

> All present and former hourly employees of Faxton-St. Luke's Healthcare and St. Luke's Home, including but not limited to registered nurses, licensed practical nurses, and certified nurses' assistants with direct patient care responsibilities who have been subject to automatic meal break deductions through use of the Kronos system, and who have or may have worked through or during unpaid meal breaks without compensation at any time during the past three years.

Decision and Order (Docket No. 66), at 29-30.

In granting the motion, the Court noted that "plaintiffs' burden at this preliminary stage is minimal." The Court also noted that under the FLSA collective action procedure, its order was only conditional, and that following discovery there would be a "second phase of the process [that] entails a far more reaching factual analysis to determine whether the class members are actually similarly situated, and the case should continue on as a collective action." Id., at 14. In a subsequent decision, the Court noted that the procedure for a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) is "distinctly different from the application for class certification," and that

> in deciding to permit the case to proceed as a collective action the Court has applied a significantly less rigorous standard than that applicable under Rule 23 of the Federal Rules of Civil Procedure to class actions and, accordingly, made no findings regarding, for example, the adequacy of the named plaintiffs to represent other members of the putative class.

Docket No. 86, at 11-12.

1689173.1

Pursuant to the conditional certification order, Faxton-St. Luke's provided plaintiffs' counsel with a list of 2,668 current and former employees who fell within the conditionally certified collective action.  Defendants also provided each individual's job code, job title and dates of employment.  Pursuant to plaintiffs' discovery requests, defendants provided plaintiffs' counsel with a list of all current job titles held by hourly employees at Faxton and St. Luke's Hospitals and St. Luke's Home.  Fellows Declaration, ¶ 7.

On June 8, 2009, Judge Peebles approved a modified notice and consent form. Docket No. 103.  On July 17, 2009, plaintiffs' counsel sent the court-approved notice to the 2,668 current and former employees eligible to opt into the collective action.  The notice, which included a stamped pre-addressed envelope for return of the consent form, advised that potential claimants were required to file their consent to become a party plaintiff by September 15, 2009. Fellows Declaration, ¶ 8.

At the end of the opt-in period, only 228 plaintiffs had filed consents.  However, many of these opt-in plaintiffs were not qualified under the Court's January 26, 2009, Order because they had not been employed by the defendants in the prior three years, were salaried, not hourly employees, or did not perform direct patient care responsibilities.  Plaintiffs' counsel stipulated to the dismissal of 47 of the opt-in plaintiffs who did not qualify to participate in the collective action, but declined to dismiss the remaining opt-in plaintiffs who did not qualify. Fellows Declaration, ¶ 9.  Defendants moved for dismissal of the remaining defendants who did not qualify under the terms of the January 26, 2009, Order, and on March 26, 2010, this Court dismissed an additional twenty-four opt-in plaintiffs. (Memorandum-Decision and Order, dated March 26, 2010, Docket No. 191).  An additional eight opt-in plaintiffs have also voluntarily dismissed their claims in the FLSA collective action for unknown reasons.  In short, of the 2,668

1689173.1

employees who received notice of the right to opt-in if they had a meal break claim, only 149 (or less than 6% of those eligible) remain as plaintiffs in the collective action. Fellows Declaration, ¶ 10.

        In light of the relatively small number of opt-in plaintiffs, defendants requested that each opt-in plaintiff answer a limited set of interrogatories setting forth what claims they were asserting. Plaintiffs' counsel moved for a protective order against any requirement for such individualized discovery responses. By order dated November 23, 2009, Judge Peebles denied the motion for a protective order and permitted defendants to serve a court-approved set of interrogatories, and afforded each plaintiff sixty (60) days to respond to the limited set of interrogatories. Docket No. 159. Plaintiffs requested, and defendants consented to, a thirty (30) day extension of time for the opt-in plaintiffs to respond to these limited interrogatories. Docket No. 166.

        Only 115 of the 179 opt-in plaintiffs remaining in the FLSA collective action at the time answered the interrogatories within the extended ninety (90) day response period. Fellows Declaration, ¶ 12. Incredibly, eight of the plaintiffs who did respond stated in their answers that they had never worked through or during a meal break without compensation during their employment with defendants. Fellows Declaration, ¶ 13. Even though this response clearly excluded these opt-in plaintiffs from participating in the collective action under the terms of the January 26, 2009, Order, plaintiffs' counsel refused to stipulate to their dismissal, and a motion for summary judgment has been filed with respect to them. Docket No. 185.

        Further, the interrogatory responses of the opt-in plaintiffs showed that there was virtually no uniformity to their claims. The responses vary widely with respect to both how often the opt-in plaintiff claims to have missed a meal break without being paid were paid for a

1689173.1

missed meal break.  Further, the number of times the various opt-in plaintiffs were paid for a

missed meal break because the automatic deduct was overridden likewise varies widely.  <u>Fellows</u>

<u>Declaration</u>, ¶ 14, Exhibits B and C.  A majority of the responding opt-in plaintiffs (63)

responded that no supervisor ever discouraged them from claiming pay for working through a

meal break.  <u>Fellows Declaration</u>, ¶ 14.  Similarly, 71 of the 115 responding opt-in plaintiffs

stated in their answers to interrogatories that they are <u>not</u> claiming they were required to perform

unpaid "pre and post" shift work and 86 stated they were <u>not</u> making a "rounding" claim.  Of the

115 responding opt-in plaintiffs, 85 stated they were <u>not</u> claiming their overtime had been

improperly calculated.  <u>Fellows Declaration</u> , ¶¶ 15-17.

        C.      <u>The Named Plaintiffs</u>

1.     <u>Rakiesha Griffin</u>

        Rakiesha Griffin worked 41 days as a certified nurse's aide at St. Luke's Home

from May 8, 2006, through July 19, 2006.  Ms. Griffin was terminated during a probationary

period during which she engaged in various inappropriate behaviors.  Indeed, while plaintiffs'

counsel repeatedly suggests that none of the plaintiffs ever had time to eat lunch, Ms. Griffin

somehow had time to share inappropriate photographs on her cell phone with co-workers and

engage in confrontations with other employees in front of patients.  <u>Boulerice Declaration</u>, ¶ 17.

Ms. Griffin's answers to interrogatories stated that she worked through or during her meal breaks

without pay approximately 75% of the time during her 41 days of work.  However, she does not

claim that any supervisor ever prohibited or discouraged her from claiming pay for the time she

worked through or during such meal breaks.

        Ms. Griffin also claims that she worked before and after her shift without

compensation approximately 75% of the time.  However, she does <u>not</u> claim that her overtime

pay was ever improperly calculated. She also does <u>not</u> claim that her hours of work were improperly rounded. <u>Fellows Declaration</u>, Exhibit K (Griffin Answers to Interrogatories).

2.     <u>Dawn Hamelin</u>

Dawn Hamelin worked at the Hospital from November 10, 1997, through February 22, 2007, as an LPN. She claims that she missed her meal breaks without pay approximately 60% of the time. <u>Fellows Declaration</u>, Exhibit J (Hamelin Answers to Interrogatories). She does claim that she was discouraged from claiming pay for missed meal breaks. She also claims that she worked before or after her shift 35% to 40% of the time, and that her overtime pay was not properly calculated 20% of the time. She does <u>not</u> claim that her hours were improperly rounded.

3.     <u>Julie Flint</u>

Plaintiff Julie Flint is the only named plaintiff who is currently employed by defendants. She has been employed at the Hospital since July 2, 1990, as an LPN. She claims that she worked through or during her meal break without pay approximately 90% of the time, and that her nurse manager discouraged her from claiming pay for such time. <u>Fellows Declaration</u>, Exhibit L (Flint Answers to Interrogatories). She does <u>not</u> claim that her overtime pay was improperly calculated or that her hours were improperly rounded. She does <u>not</u> claim that she worked before or after her shift without compensation.

Pursuant to Magistrate Judge Peebles' order of October 9, 2009, allowing discovery to go forward on class certification issues (<u>Docket No</u>. 154), defendants served notices of deposition for the three named plaintiffs on January 4, 2010. On March 4, 2010, plaintiffs' counsel agreed to produce the three named plaintiffs for deposition on March 17-18, 2010.

1689173.1

However, on March 10, 2010, plaintiffs' counsel reversed field and unilaterally cancelled the depositions of all three of the named plaintiffs. <u>Fellows Declaration</u>, ¶ 24.

The named plaintiffs submitted cursory affidavits in support of the motion for a collective action under the FLSA. Judge Peebles found, <u>inter</u> <u>alia</u>:

- "not a great deal is known regarding . . . the three named plaintiffs" (<u>Docket No</u>. 66, at 4);
- Plaintiffs' affirmations "are only slightly more revealing"(<u>id.</u>); and
- "the record now before the Court, including the affirmations of the named plaintiffs in this case, are lacking in the specificity noted in many other reported decisions" (<u>id.</u> at 28).

Despite these statements by the Court, the named plaintiffs have not submitted new affidavits in support of this motion.

> D. <u>Faxton-St. Luke's Policies</u>

1. <u>The Faxton-St. Luke's Meal Break Policies</u>

Contrary to the statements in plaintiffs' form motion, Faxton-St. Luke's has a lawful policy with respect to the meal break deduction. It is correct that the Kronos timekeeping system deducts 30 minutes for a meal break. However, as Judge Peebles stated in his decision on the FLSA collective action, the automatic meal break deduction does not violate the FLSA. <u>Docket No</u>. 66, at 16, 18 ("the mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA"; "I reject the existence of the break deduction policy practice through Kronos standing alone, as being sufficient as a common denominator to permit a collective action"). Further, the defendants follow a policy that requires payment to employees for missed meal breaks. The written policy is set forth in the Faxton-St. Luke's employee handbook and provides in part:

> If you remain in the facility, you do not have to swipe out
> during your meal period. If you leave the facility, you
> should swipe out upon leaving and swipe in upon returning.

9

1689173.1

> If you are required to work through your scheduled meal period, you will be compensated accordingly. Prior approval from your supervisor should be received before you work through your meal period. In addition, a PEAR form should be filled out by the employee and given to the supervisor so the supervisor can cancel the meal period in Kronos and input a note as so why the employee was needed to work through his/her meal period.

Scibelli Declaration, Exhibit E.

The current policy was implemented in July of 2003, and was not only incorporated into the employee manual, but was also posted at areas where employees swiped their cards. The policy is similarly set forth in the administrative manual of Faxton-St. Luke's Healthcare. Scibelli Declaration, ¶ 16. St. Luke's Home also uses the Kronos system and has a policy that employees are to submit a PEAR form to their supervisor if they work through their meal period without pay. Boulerice Declaration, ¶¶ 7, 10.

Plaintiffs' memorandum incorrectly states that defendants have not produced any documents showing formal training to employees concerning corrections for meal breaks (Plaintiffs' Memorandum, at 13).[2] In fact, Faxton-St. Luke's employees are provided a training module at the outset of employment which sets forth these policies and advised employees to complete the PEAR form if they missed their meal break. Scibelli Declaration, ¶ 15, Exhibit H; Boulerice Declaration, ¶ 11, Exhibit D.

Incredibly, plaintiffs' memorandum also states that defendants have confirmed "that employees preformed work during their meal breaks at least 44,000 times." (Plaintiffs' Memorandum, at 12.) Of course, the 44,000 times is the number of times that the automatic

---

[2] Plaintiffs' counsel has had ample opportunity to conduct discovery in support of this motion. Judge Peebles allowed discovery of defendants to proceed on October 9, 2009, and plaintiffs served interrogatories and document responses. Defendants' answered the interrogatories on December 22, 2010. To date, defendants have produced 70,854 pages of documents. Fellows Declaration, ¶ 25.

1689173.1

meal break deduction was <u>overridden</u> so that employees were paid for a missed or interrupted

meal break.  <u>Scibelli Declaration</u>, ¶ 17, <u>Boulerice Declaration</u>, ¶ 13.

2.      <u>The Faxton-St. Luke's Rounding Policy</u>

Plaintiffs' request for a class with respect to the defendants' rounding policy

quotes the Hospital's policy:

> The hospital pays in one-quarter (1/4) hours segments.  An
> employee must work more than seven (7) minutes in the
> one-quarter hour to be paid; thus, any employee who
> swipes in more than seven (7) minutes after the start of
> their scheduled shift or swipes out more than seven (7)
> minutes before the end of their shift, will not be paid for the
> quarter hour.

<u>Solomon Declaration</u>, Exhibit B.  As the policy document also attached plaintiffs' motion papers

shows, if the employee swipes in up to seven (7) minutes late, their pay is rounded up ("an

employee is not docked a quarter hour of pay until he/she swipes in more than seven (7) minutes

after the start of the scheduled shift").  <u>Solomon Declaration</u>, Exhibit B.  Plaintiffs'

memorandum of law ignores the Department of Labor Wage and Hour Division Policy document

attached to their own papers, which upholds the very rounding policy followed by defendants.

This DOL policy document states:

> Some employers track employee hours worked in 15
> minute increments, and the FLSA allows an employer to
> round employee time to the nearest quarter hour.  However,
> an employer may violate the FLSA <u>minimum wage</u> and
> <u>overtime pay</u> requirements if the employer always rounds
> down.  Employee time from 1 to 7 minutes may be rounded
> down, and thus not counted as hours worked, but employee
> time from 8 to 14 minutes must be rounded up and counted
> as a quarter hour of work time.

<u>Solomon Declaration</u>, Exhibit F.  Plaintiffs provide no explanation of how the Faxton-St. Luke's

rounding policy differs from the Department of Labor guidance attached to their own motion.

1689173.1

The Solomon Declaration also attaches excerpts from the Kronos timekeeping report for named plaintiffs Julie Flint and Dawn Hamelin.  However, plaintiffs provide no analysis whatsoever of these documents.  Solomon Declaration, Exhibit C.  An analysis of the pay records confirms that Faxton-St. Luke's applied its lawful policy, i.e., that Ms. Flint's and Ms. Hamelin's hours were rounded both up and down.  Plaintiffs submitted records for 38 days of work by Ms. Flint, and on 16 of these days her hours were rounded to her advantage.  Likewise, plaintiffs submitted records for 36 days of work by Ms. Hamelin, and on 7 of those days her hours were rounded to her advantage.  Declaration of Kristen Long, ¶¶ 36-37.

Most importantly, all three named plaintiffs signed answers to interrogatories responding "No" to the question:  "Do you claim that your hours of work were improperly rounded in calculating your pay at anytime since October 30, 2002?"  Fellows Declaration, Exhibits J-L.

Plaintiffs' proposed "rounding" claim is combined with a claim that employees were required to perform "off-the-clock" or "pre and post shift" work.  In this regard, of the 115 opt-in plaintiffs who answered the Court-ordered interrogatories, 71 answered they were not making a claim for "pre and post" shift work.  Of the 115 responding opt-in plaintiffs, 86 stated they were not making a claim that their hours were improperly rounded.  Fellows Declaration, ¶¶ 15-17.

3.     The Faxton-St. Luke's Overtime Policy

With respect to the putative regular rate class, plaintiffs also fail to identify any policy of defendants that would support class certification.  The Solomon Declaration simply states that "paystubs and payroll records reflecting defendants' failure to include all remuneration in calculating its employees regular rate for purposes of determining the proper

12

overtime rate." Solomon Declaration, ¶ 11. All that is attached to the Solomon Declaration is unidentified payroll reports, with boxes of text superimposed on the payroll reports setting forth plaintiffs' claims that overtime pay was not properly calculated on the applicable pay stub. Nowhere do plaintiffs identify what "shift differential" or other payment they claim was not included in the calculation of "regular rate." In fact, defendants do include "shift differentials" and other such payments in the calculation of "regular rate" for calculation of overtime pay. Long Declaration, ¶ 2.

Both Ms. Griffin and Ms. Flint denied in answers to interrogatories that they were claiming that their overtime pay had been improperly calculated. Fellows Declaration, Exhibits K and L. Ms. Hamelin indicated that she believes her overtime pay was miscalculated approximately 20% of the time, but stated she had no records documenting this allegation.[3]

A review of the paystubs attached to the Solomon Declaration indicates they are for three different employees, only one of whom (Julie Flint) is a named plaintiff. Long Declaration, ¶ 4.[4] Of course, Ms. Flint denied in her answers to interrogatories that she is claiming her overtime pay was improperly calculated. In any event, the calculations attached to the Solomon Declaration are inaccurate for the simple reason that they double count hours. Plaintiffs' counsel included all hours worked in calculating the "regular rate," and then calculated the overtime pay due for overtime hours at 1.5 times the regular rate even though those overtime hours had already been included in the "regular rate" calculation, and should only have been added at .5 times the regular rate. Long Declaration, ¶¶ 12, 22, 32. Plaintiffs' counsel

---

[3] Defendants produced the Kronos and other payroll records for all opt-in plaintiffs on December 22, 2009, and they thus had opportunity to review this information before answering the interrogatories and before making this motion. Fellows Declaration, ¶ 25.
[4] The other two paystubs are for opt-in plaintiffs Jodi Luvera and Laura Inman. Long Declaration, ¶¶ 13, 23. Luvera denied in her answers to interrogatories that she was claiming that her overtime pay had been improperly calculated or that her hours of work had been improperly rounded. Inman did not respond to the Court-ordered interrogatories. Fellows Declaration, Exhibit M.

also included a "waiver" payment Ms. Flint received because she did not elect the health insurance offered by Faxton-St. Luke's, and such a payment is not properly included in calculating the regular rate.  Long Declaration, ¶ 12; 29 U.S.C. § 207(e)(2).

As with the other claims, 85 of the 115 opt-in plaintiffs who answered the Court-ordered interrogatories stated they were not claiming their overtime was improperly calculated. Fellows Declaration, ¶ 15.

4.      The ERISA Claim

Plaintiffs have offered no evidence in support of their alleged ERISA class claims, other than to assert that if they were entitled to additional wages, they would have had additional contributions to their 401(k) accounts.  However, as set forth above, they have not submitted proof they were entitled to additional wages.

## DISCUSSION

In order to gain class certification, plaintiffs must establish both the prerequisites in Rule 23(a) of the Federal Rules of Civil Procedure, and the requirements for one of the three types of class actions set forth in Rule 23(b).  The Second Circuit has held that a district court may certify a class only after making determinations and findings regarding the underlying facts that are relevant to the Rule 23 requirements.  In Re Initial Public Offering Securities Litigation, 471 F.3d 24, 41 (2d Cir. 2006).  District courts have "substantial leeway in deciding issues of class certification," and will only be overturned if a class certification decision constitutes an abuse of discretion.  Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 162 (2d Cir. 2001).

Plaintiffs have met neither of their burdens.  Most notably, in light of the availability of the FLSA collective action, plaintiffs cannot establish that a class action "is

14

1689173.1

superior to other available methods for fairly and efficiently adjudicating the controversy" as is

required under Rule 23(b)(3).  Nor can they establish that "questions of law of fact common to

the class predominate over any questions affecting only individual members" as is also required

under Rule 23(b)(3).  Further, case law indicates that the Court should decline to exercise

supplemental jurisdiction over plaintiffs' state law claims.

I.     **PLAINTIFFS HAVE NOT MET THE REQUIREMENTS OF RULE 23(a)**

Rule 23(a) provides that a party may sue on behalf of a class only if:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the
claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of
the class.

A.     Plaintiffs have not established numerosity.

Defendants acknowledge that the Second Circuit has stated that numerosity is

ordinarily met where the proposed class consists of more than forty members.  However, the test

remains that the class be so numerous that joinder of all class members is impracticable.  In

rejecting certification of a class with a potential of 15,000 members, the court in Thiebes v. Wal-

Mart Stores, Inc., 2002 U.S. Dist. LEXIS 664 (D. Or. Jan. 9, 2002), held that in a case where it

had already certified a collective action under the FLSA, the proper question on numerosity was

not the number of potential class members, but the number of individuals who had elected to opt

into the FLSA action.  The court stated that the fact that only 2.7 percent of potential class

members had opted in

> cautions against a finding that joinder is impracticable,
> especially in light of the fact that the notice of the FLSA
> collective action included a description of plaintiffs' theory
> of the case that is the same as their basis for liability under
> the state law claims.

Id. at *8.

Here, the history of this litigation demonstrates that it is practicable to join all

plaintiffs who wish to pursue a claim. This is demonstrated by the fact that so few plaintiffs

have opted in with respect to the FLSA claims (plaintiffs themselves assert that the FLSA claims

are indistinguishable from the New York Labor Law claims (see Plaintiffs' Memorandum, at 5)).

It should be further noted that prior to the commencement of this action, not a single employee

had complained to Faxton-St. Luke's that they had not been compensated for a missed meal

break. Scibelli Declaration, ¶ 18; Boulerice Declaration, ¶ 14. Nor has any employee brought

their own action since the commencement of this action in November 2008. All of Faxton-St.

Luke's operations are in Oneida County, and its employees are all local. Thousands of current

and former employees were given the opportunity to opt-in to the action in a local court and only

a tiny fraction did so. Accordingly, the number of plaintiffs wanting to bring a claim is not so

great that joinder is impracticable.

B.    Plaintiffs have failed to meet the commonality and typicality requirements.

Plaintiffs seek a class consisting of all hourly employees of the Defendants. This

would include over 364 different job titles, covering 195 different departments, and multiple

facilities (Faxton Hospital, St. Luke's Hospital, and St. Luke's Home).

Plaintiffs assert that the claims of the three named plaintiffs satisfy the

commonality and typicality requirement because they were all subjected to common unlawful

policies. Most notably, plaintiffs assert that all of the class members were subject to a common

unlawful meal break policy. However, plaintiffs have never identified what the unlawful meal

break policy is.  As Judge Peebles noted in his decision conditionally certifying the FLSA

collective action, "the mere existence and implementation of a policy or practice of making

automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA."

Docket No. 66, at 16.  The actual policy of the defendants, as set forth in the employee handbook

and administrative manual is that employees are to be paid for any missed meal breaks.  Scibelli

Declaration, Exhibit E, at 27, Exhibit J, at 3.  Further, Faxton-St. Luke's has established a

procedure for employees to be paid for missed meal breaks.  Employees are trained on this

policy.  Scibelli Declaration, ¶ 15, Exhibit H; Boulerice Declaration, ¶ 11, Exhibit D.  Indeed, in

the time period for which plaintiffs now seek class certification, the automatic meal break

deduction was overridden 44,000 times.  Scibelli Declaration, ¶ 17; Boulerice Declaration, ¶ 13.

The fact that there is no uniform unlawful practice that could meet the

commonality and typicality requirements is borne out by the answers to interrogatories of the

opt-in plaintiffs.  The responses range from the eight opt-in plaintiffs who stated that they had

never worked through a meal break without compensation, to plaintiffs who claimed they

worked through their meal break without compensation "every day."  Other plaintiffs submitted

interrogatory responses which stated "about three times", "at least twice a month", "about 50%

of the time", "at least 25% of the time", and so forth.  Fellows Declaration, Exhibits B and C.

Exhibits B and C to the Fellows Declaration are a tabulations of the interrogatory responses of

the 115 opt-in plaintiffs who responded with respect to meal break.  A review of these

tabulations confirms that the claim of each opt-in plaintiff will require individualized proof.

Of the opt-in plaintiffs, some were paid for meal breaks as many as 171 times

during the period in question.  The number of times the automatic meal break was overridden,

and the employee paid for a missed meal break, varies as much as the claims of missed meal

breaks.  <u>Fellows Declaration</u>, Exhibits B and C.  Further, a majority of the opt-in plaintiffs who answered the interrogatories stated that their supervisor did <u>not</u> discourage them from requesting payment for missed meal breaks.  <u>Fellows Declaration</u>, ¶ 14.

Similarly, plaintiffs have not shown that they have been subjected to a common unlawful rounding policy.  As is set forth above, the Faxton-St. Luke's rounding policy is taken directly from a Department of Labor policy document.  Most importantly, all three named plaintiffs signed answers to interrogatories indicating that they were <u>not</u> claiming their pay had been improperly rounded.  <u>Fellows Declaration</u>, Exhibits J-L.  It is therefore unclear how they could possibly meet the commonality/typicality requirement with respect to alleged illegal rounding policy.  <u>General Telephone Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 156 (1982) ("A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.").  Consistent with the Department of Labor policy, and Faxton's policy, courts have held that rounding does not violate the FLSA as long as the employer's rounding rules are not applied in a manner that always resulting in rounding time down.  <u>See</u> <u>Harding v. Time Warner, Inc.</u>, 2010 U.S. Dist Lexis 5896 (S.D. Cal. Jan. 26, 2010) (dismissing plaintiff's rounding claims under the FLSA and California law based on rounding, citing 29 C.F.R. § 785.48(b)); <u>Adair v. Wisconsin Bell</u>, 2008 U.S. Dist. Lexis 68942, at *30 (E.D. Wis. Sept. 11, 2008) (denying plaintiffs' motion for conditional certification of a collective action based on failure to show a common illegal rounding policy; citing 29 C.F.R. § 785.48(b) for the proposition that a rounding policy does not per se deprive employees of pay for time worked; and finding that plaintiffs submitted no proof that the policy "results in a systematic underreporting of overtime actually worked"); <u>East v. Bullock's, Inc.</u>, 34 F. Supp. 2d 1176 (D. Ariz. 1998) (denying plaintiff's motion for summary judgment on FLSA and state law rounding

claims and finding that defendants' rounding practices which sometimes did not credit for all time worked, but which at other times credited for time not worked, complied with FLSA); see also McElmurry v. US Bank Nat'l Ass'n, 2005 U.S. Dist. Lexis 44452 (D. Or. July 29, 2005) (recommending that plaintiffs' motion to send a collective action notice to putative class members be rejected and finding that certification of plaintiffs' rounding claim was not appropriate absent proof that policy of rounding to the nearest six minutes deprived the named plaintiff and other class members of pay for time worked over a period of time), Report and Recommendation adopted, 2005 U.S. Dist. Lexis 44451 (D. Or. Oct. 7, 2005).

   Likewise, the plaintiffs' motion provides no proof that the three named plaintiffs have been subjected to an unlawful overtime policy. Plaintiffs' counsel has never identified any unlawful overtime policy or identified what payments they claim Faxton-St. Luke's does not include in calculating "regular rate." Indeed, Ms. Griffin and Ms. Flint denied in their answers to interrogatories that they were claiming their overtime pay had been improperly calculated. Fellows Declaration, Exhibits K and L. Ms. Hamelin stated in her answers to interrogatories that she believes her overtime pay was miscalculated approximately 20% of the time, but stated she had no records documenting this allegation. She made this statement despite the fact that her payroll records had been produced to her in discovery. Fellows Declaration, ¶ 25. The Solomon Declaration attaches one payroll report of Ms. Flint, but she denied any claim for overtime, and a review of the payroll report indicates her overtime was calculated properly. Long Declaration, ¶¶ 4-11. In fact, plaintiffs have not identified any unlawful policy with respect to payment of overtime, and Faxton St. Luke's does include shift differentials and other payments in its calculation of the regular rate. Long Declaration, ¶ 2.

19

What is left of plaintiffs' claims is that notwithstanding the lawfulness of the automatic meal break deduction, and the fact that Faxton-St. Luke's has written policies requiring that the deduction be overridden when an employee works through the meal break, and the undisputed evidence that the meal break deduction was in fact overridden on tens of thousands of occasions, is plaintiffs' counsel's assertion that Faxton-St. Luke's has failed to insure that on every occasion an employee missed a meal break, the employee was paid. The plaintiffs do not rely on a common unlawful policy, but on an allegation that the policy was not followed in all cases. In short, the proof of any particular FLSA violation will be completely individualized.

Plaintiffs attempt to dismiss what the discovery has shown regarding the Faxton-St. Luke's Healthcare and St. Luke's Home policies and practices, and the wildly diverse answers to interrogatories by the opt-in plaintiffs, by stating that these matters only go to damages, and not to liability. This completely misses the point. There is only an FLSA violation with respect to the meal break claim if there are damages, i.e., if the employee worked through a meal break and the supervisor did not override the automatic deduction. The plaintiff-by-plaintiff analysis of whether a meal break was missed without compensation will completely swallow any common issue in the case. As is set forth in more detail below with respect to Rule 23(b)(3), courts have repeatedly found that common questions do not predominate and denied class certification where each class member will present an individualized claim. See, e.g., De La Cruz v. Gill Corn Farms, Inc., 2005 U.S. Dist. LEXIS 44675 (N.D.N.Y. Jan. 25, 2005); Mateo v. V.F. Corp., 2009 U.S. Dist. LEXIS 105921, at *17 (N.D. Ca. Oct. 27, 2009) ("While it is true that the Court would need to examine these individual issues in order to calculate damages, these individual issues would also have to be addressed in order to determine

1689173.1

liability."); <u>England v. Advance Auto Stores Co.</u>, 263 F.R.D. 423 (W.D.Ky. 2009) (denying class certification because even if commonality/typicality were met, common issues would not predominate in meal break and off the clock work claims).

> C.    <u>Plaintiffs have failed to show they will fairly and adequately represent the interests of the class.</u>

As a final matter, it is far from clear that plaintiffs will fairly and adequately protect the interests of the class.  First, not one of the three named plaintiffs has submitted a new affidavit in support of this motion.  Rather, plaintiffs' counsel is recycling the named plaintiffs' prior cookie cutter declarations that were submitted on the motion for a collective action under the FLSA.  As Judge Peebles noted in his decision on the FLSA collective action, these affidavits revealed little about the named plaintiffs' claims.  <u>Docket No</u>. 66, at 4, 28.  Further, each of the named plaintiffs has submitted interrogatory answers denying they claim their hours were improperly rounded, and they cannot adequately represent that proposed class on such claim. <u>East Texas Motor Freight System, Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.")

Further, while Faxton-St. Luke's does not question that proposed class counsel has extensive experience in FLSA class actions, it is far from clear that they will adequately represent the class in this matter.  On this motion they have submitted affidavits in which they do not even appear to know what city Faxton-St. Luke's is located in and make allegations of massive layoffs that never occurred.  They first agreed to produce the named plaintiffs for deposition and then abruptly cancelled them.  <u>Fellows Declaration</u>, ¶ 24.

In connection with the FLSA collective claims, the opt-in plaintiffs were all ordered to answer interrogatories.  In attempting to explain away the responses of certain

1689173.1

plaintiffs in these interrogatories, proposed class counsel stated that the responses had been

prepared without the benefit of counsel.

> Plaintiffs' counsel raised these concerns with the Court at a
> conference on March 23, 2010, advising that some
> responses may not necessarily be correct because many
> responding plaintiffs did not have the assistance of counsel
> in answering the interrogatories.

Docket No. 206, at 11 n.1.

It is unclear how plaintiffs' counsel could state this, as each opt-in plaintiff

retained the Thomas Solomon firm as their attorneys.  As plaintiffs' counsel eschewed the

obligation to assist the relatively small number of opt-in plaintiffs in answering eight simple

court-ordered interrogatories, it is unclear how seriously they will take their obligations to each

individual class member should this motion be granted.


## II.     PLAINTIFFS HAVE NOT MET THE REQUIREMENTS OF RULE 23(b)

In addition to meeting the four prerequisites for class certification in Rule 23(a),

plaintiffs must establish that class certification is appropriate under one of the three types of class

actions set forth in Rule 23(b).  Here not only does case law in the Northern District indicate that

class certification is inappropriate, it also indicates that the Court should decline to exercise

supplemental jurisdiction over the New York Labor Law claims.

A.     A class cannot be certified under Rule 23(b)(3).

A class may be certified pursuant to Rule 23(b)(3) if

> the court finds that the questions of law or fact, common to
> class members predominate over any questions affecting
> only individual members, and that a class action is superior
> to other available methods for fairly and efficiently
> adjudicating the controversy.

Fed.R.Civ.P. 23(b)(3).

1689173.1

In the leading case in the Northern District involving a hybrid action joining FLSA and New York Labor Law claims, Judge McAvoy declined to grant Rule 23 class certification where the proposed New York Labor Law class would have overwhelmed the FLSA collective action.  De La Cruz v. Gill Corn Farms, Inc., 2005 U.S. Dist. LEXIS 44675 (N.D.N.Y. Jan. 25, 2005).  In De La Cruz, just as here, plaintiffs joined FLSA and New York Labor Law claims in the same complaint.  Just as here, plaintiffs' counsel first moved for a collective action under the FLSA, which motion the court granted.  Later, plaintiffs' counsel moved for Rule 23 class certification of the New York Labor Law claims.  The court found that plaintiffs had established the requirements of Rule 23(a).  However, the court found that a class action was not maintainable under Rule 23(b)(3).  Specifically, the court applied the fourth factor in Rule 23(b)(3)(D), and held that a class action would not be manageable.

As an initial matter, the court in De La Cruz noted that the proposed class definition "begs the very legal question at issue in this case" because the definition depended on a legal determination that had not yet been made.  Id. at *18.  The same holds true here.  With respect to the meal break claim, plaintiffs propose a class of

> All current and former hourly employees of defendants from November 13, 2002 to present whose pay was subject to an automatic deduction even when the employees were not afforded a bona fide meal period of at least 30 minutes and who were therefore not paid for all their compensable work time.

Plaintiffs' Memorandum, at 4.

In short, an employee is a member of the proposed meal break class only if they worked through a meal break without being paid.  It is unclear how plaintiffs would propose that the members of this class be ascertained.  We already know from the answers to interrogatories submitted by the 115 opt-in plaintiffs who responded that at least eight employees do not even

23

1689173.1

claim to have worked through a meal break without compensation.  Fellows Declaration, ¶ 13.
Further, the majority of the 115 opt-in plaintiffs who answered the interrogatories have
disclaimed any "rounding", "pre and post shift" work or improper calculation of overtime
claims.  Fellows Declaration, ¶¶ 15-17.  Absent an ascertainable class, certification should be
denied.  Mike v. Safeco Insurance Co., 223 F.R.D. 50, 53 (D. Conn. 2004) (denying class
certification where the proposed class definition was "untenable because the court would have to
conduct an individual inquiry regarding the merits of each proposed plaintiff's claim in order to
determine class membership."); Mueller v. CBS, Inc., 200 F.R.D. 227, 234 (W.D. Pa. 2001)
(denying class certification where "[d]etermining membership in the class would essentially
require a mini-hearing on the merits of each member's case" before determining whether a
"would-be" class member was actually a member of the class).

     Second, the De La Cruz court found that having an opt-in FLSA collective action
in the same action as an opt-out New York Labor Law class would be inherently confusing for
potential class members.  2005 U.S. Dist. LEXIS 44675, at *20 ("This Court agrees with those
other courts that have found that 'a notice that calls both for a decision to opt-in to a collective
action and also whether to opt-out of the class action . . . seems to be an inherently difficult task
to do . . . in a non-confusing  manner").  Judge McAvoy made this conclusion regarding the
confusion caused by an "opt-in" FLSA notice, and an "opt-out" New York Labor Law notice
even though, just as here, the FLSA "opt-in" notice had already gone out before the Court
considered whether to certify the "opt-out" New York Labor Law class.

     Third, Judge McAvoy noted in De La Cruz that

> Congress specifically decided to use an opt-in scheme for
> overtime claims.  "That policy and the underlying
> congressional intent would be thwarted if a plaintiff were
> permitted to backdoor the shoehorning in of unnamed

> parties through the vehicle of calling upon similar state
> statutes that lack such an opt-in requirement."

Id. at *21 (quoting Rodriguez v. The Texan, Inc., 2001 U.S. Dist. LEXIS 24652, at *1 (N.D. Ill.

Mar. 7, 2001).

    Finally, Judge McAvoy in De La Cruz noted that there would be little benefit to

proceeding on a class basis that would require separate trials for each plaintiff because of the

individualized inquiries on damages, the court noted that a class action "simply is not a superior

method for a fair and efficient adjudication of the controversy."[5] Id. at *27. See also Dauphin v.

Chestnut Ridge Transportation Inc., 2009 U.S. Dist. LEXIS 74483, at *12 (S.D.N.Y. Aug. 20,

2009) (declining Rule 23 class certification of New York labor law claim by truck drivers

because class questions would not predominate where "fact-finder may have to determine

defendants' liability on a driver-by-driver basis").

    Notably, plaintiffs do not even cite De La Cruz, which is the leading Northern

District case on certifying a Rule 23 New York Labor Law class after certifying a collective

FLSA action on the same claims. The Northern District case plaintiffs do cite, Eldred v.

Comforce Corp., 2010 U.S. Dist. LEXIS 18260 (N.D.N.Y. Mar. 2, 2010), provides no support

for their position. In Eldred, the employer allegedly maintained a class wide unlawful policy of

withholding union dues from wages without the written authorization from the employee

required under the New York Labor Law. The court found that each class member's claim

would thus present identical issues, varying only by the length of service of the employee. That

is in no way the case here. Nor did Eldred present the issue Judge McAvoy faced in De La Cruz,

---

[5] Judge McAvoy also noted that class treatment of the New York Labor Law claims would have required any plaintiff who wanted to pursue liquidated damages to opt out, as CPLR 901(b) provides that penalties may not be pursued in a class action. The Supreme Court has now held that CPLR 901(b) does not apply to federal class actions and that liquidated damages available under New York law may be pursued in a federal class action. Shady Grove Orthopedic Associates v. Allstate Insurance Co., 559 U.S. ___, 130 S. Ct. 1431 (2010). However, this decision does not affect the balance of Judge McAvoy's reasoning in denying class certification in De La Cruz.

1689173.1

as the New York Labor Law claims did not threaten to overwhelm the FLSA claims.  Similarly,

in Mendez v. Radec Corp., 232 F.R.D. 78 (W.D.N.Y. 2005), the employer conceded on the class

certification motion that it had applied a uniform policy of not paying employees for travel time

to worksites, which policy plaintiffs alleged violated the New York Labor Law.  There is no such

concession here.  Nor does Alleyne v. Time Moving & Storage Co., LLC, 264 F.R.D. 41

(W.D.N.Y. 2010), provide any support for plaintiffs as in that case the employer defendant

joined in the motion for class certification and approval of a class settlement agreement.

    Several courts have denied class certification of meal break claims under Rule

23(b)(3) because individualized questions of fact predominated over common issues.  In Mateo

v. V.F. Corp., 2009 U.S. Dist. LEXIS 105921 (N.D. Ca. Oct. 27, 2009), plaintiff worked at a

retail clothing store, and brought an action asserting that she had been denied her meal break in

violation of the California Labor Code, which, similar to New York law, requires that employees

be given a duty-free 30 minute meal break for each five hours work.  Plaintiff sought

certification of a class of all employees of the defendant in California who were allegedly

illegally denied "one hour of pay for missed or untimely meal periods between March 20, 2005

and the present."  The court found that the Rule 23(a) requirements were met, but denied class

certification under Rule 23(b)(3) because individualized, rather than common, issues

predominated.  The court noted that there would be several individualized issues with respect to

each meal break claim, i.e., whether the employee did in fact work through the meal break,

whether a supervisor instructed the employee to work through the meal break, whether the

employee requested compensation for the missed meal break, and whether the employer refused

such compensation.  The court concluded:

> Because individual issues rather than common issues predominate, Plaintiff does not satisfy the predominance requirement.
>
> Plaintiff argues that these factual inquiries go to damages, and therefore have no bearing on the issue of class certification. . . .  While it is true that the Court would need to examine these individual issues in order to calculate damages, these individual issues would also have to be addressed in order to determine liability.

Id. at *17.  See also Babineau v. Federal Express Corp., 576 F.3d 1183 (11th Cir. 2009) (affirming denial of class certification of meal break claims where individualized inquiries would predominate); Helm v. Alderwoods Group, Inc., 2009 U.S. Dist. LEXIS 123527, at *32 (N.D. Ca. Dec. 29, 2009) (denying class certification of meal break claim "because individualized issues would overwhelm any common issues presented with respect to this set of allegations"); Blackwell v. Skywest Airlines, Inc., 245 F.R.D. 453 (S.D. Ca. 2007) (finding that individual issues with regard to meal break claim predominated and denying class certification); Pablo v. ServiceMaster Global Holdings, Inc., 2009 U.S. Dist. LEXIS 79584 (N.D. Ca. Aug. 17, 2009) (denying class certification under Rule 23(b)(3) because individual issues predominated in both overtime and meal break claims); England v. Advance Stores Co., 263 F.R.D. 423 (W.D. Ky. 2009) (denying class certification of meal break claims under Rule 23(b)(3) because individualized questions predominate).

The England case is on point.  In England, the named plaintiff worked for a chain of retail auto parts stores, and claimed that he had been required to work off the clock and had been denied meal and rest breaks in violation of the Kentucky Wages and Hours statutes.  Just as here, the defendant's employee handbooks, training materials and other policy documents all provided that employees should be paid for all hours worked.  263 F.R.D. at 428-29.  Plaintiff,

however, alleged that there was an unwritten practice of the defendant to require off-the-clock

work and not to provide meal breaks.  263 F.R.D. at 454-55.  The Court held that the:

> allegation of an unwritten company policy that violates the
> Kentucky Wages and Hours Act in these respects might be
> sufficient, standing alone, to satisfy the lesser standard of
> Rule 23(a)(2) and its commonality requirement. . . .  The
> problem, however, for England is that the nature of his
> claims and the type of evidence required prove them, does
> not satisfy the more demanding requirement of
> predominance needed to bring a Rule 23(b)(3) class action.
>
> Were the Court to attempt to proceed with a Rule 23(b)(3)
> class action, it would quickly find itself swamped with
> individual issues related to each of the plaintiff employee
> class members.  One must keep in mind that England must
> establish a state wide de facto company policy of requiring
> off-the-clock work and of denying lunch and rest breaks.
> The written materials of the company run entirely contrary
> to such a theory.  England, as a result, will be forced to
> proceed store-by-store and employee-by-employee
> determine first whether the same daily close procedures
> adopted at Store 8520 were also required and taught by
> store managers at the other 85 Kentucky stores.
>
> Even within each store, it must also be determined whether
> all the managers and assistant managers followed the same
> unwritten clock procedure as that employed at Store 8520.
> Such an exercise would require dozens, if not more, of
> depositions directed to each of the store's various managers
> and employees in order to confirm that the alleged de facto
> policy does in fact exist.  The practical import of this
> situation is that even as to the question of liability, apart
> from damages, the Court will be faced with class action
> claims that are primarily individual in nature with proof
> being required from a multitude of hourly wage managers
> and employees across a number of stores to determine
> initially whether such a de facto unwritten policy even
> existed.

263 F.R.D. at 455.

The same is true with respect to Faxton-St. Luke's.  Faxton-St. Luke's maintains

written policies, an employee handbook, an administrative manual and training materials, all

consistent with the requirements of the FLSA.  Faxton further denies the existence of any

"de facto" policy or practice contrary to these materials.  Faxton's assertion is backed up by the

fact that it never received a grievance from an employee claiming the denial of a meal break, and

the fact that it has overridden the automatic meal break deduction on tens of thousands of

occasions, and by the paltry response to the notice of the collective FLSA action.  If plaintiffs

intend to prove a "de facto" practice, plaintiffs will need to produce proof from dozens of

different departments, including hundreds of different managers and thousands of employees.

> In England, the Court concluded that

> > What the Court would be left with in this instance, as
> > noted, is a series of mini-trials on questions of both liability
> > and damages involving if not hundreds, at a minimum,
> > dozens of plaintiff employees who would rightfully be
> > required to come forward and prove that they were required
> > by their manager(s) to work off-the-clock and/or were
> > denied lunch and rest breaks, when such events did occur,
> > the duration of such events (particularly with regard to off-
> > the-clock work) and the resulting losses, both monetary and
> > non-monetary.

263 F.R.D. at 457.  See also Robinson v. Wal-Mart Stores, Inc., 253 F.R.D. 396, 401-02 (S.D.

Miss. 2008) (denying class certification under Rule 23 for meal break claims because court

"would be required to make individualized calculations to determine the amount of recovery, if

any, as to each member"); Basco v. Wal-Mart Stores, Inc., 216 F. Supp. 2d 592, 603 (E.D.La.

2002) ("Individual issues also predominate plaintiffs' claims that they were required to work off-

the-clock").

> B.     A class cannot be certified under Rule 23(b)(2).

Plaintiffs also assert that a class action may be certified under Rule 23(b)(2).  A

class may be certified under Rule 23(b)(2) where

> > the party opposing the class has acted or refused to act on
> > grounds that apply generally to the class, so that final

29

> injective relief or corresponding declaratory relief is
> appropriate respecting the class as a whole.

The Second Circuit has made clear that Rule 23(b)(2) is limited to cases in which the request for monetary damages is incidental to the request for equitable relief. See Parker v. Time Warner Entertainment Co., L.P., 331 F.3d 13, 20 (2d Cir. 2003); Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 163-64 (2d Cir. 2001) (Rule 23(b)(2) class certification should be denied unless injunctive relief predominates over monetary relief); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir. 1968) ("Subsection (b)(2) was never intended to cover cases like the instant one where the primary claim is for damages"), vacated on other grounds, 417 U.S. 156 (1974).[6]  See also Vengurlekar v. Silver Line Technologies, Ltd., 220 F.R.D. 222, 229 (S.D.N.Y. 2003) (denying certification of FLSA claims under Rule 23(b)(2) because "These claims seek money damages for the most part.").  Judge McAvoy denied Rule 23(b)(2) certification of the wage claims in De La Cruz for this reason.  2005 U.S. Dist. LEXIS 44675, at *14 (denying certification under Rule 23(b)(2) because requests for injunctive and declaratory relief were intended "simply . . . to lay the basis for a damage award").

The cases cited in plaintiffs' memorandum with respect to certification under Rule 23(b)(2) are not wage and hour cases. See Molski v. Gleich, 318 F.3d 937 (9th Cir. 2003) (ADA claim); Satchell v. FedEx Corp., 2005 U.S. Dist. LEXIS 37354 (N.D. Cal. Sept. 28, 2005) (racial discrimination claim); Olden v. LaFarge, 383 F.3d 495 (6th Cir. 2004) (environmental contamination claim).

C.     A class cannot be certified under Rule 23(b)(1).

A class may be certified under Rule 23(b)(1) if the prosecution of individual suits would create a risk of "inconsistent or varying adjudications with respect to individual members

---

[6]  Named plaintiffs Hamelin and Griffin lack standing even to pursue injunctive relief as their employment terminated before the action was commenced.  White v. First American Registry, 230 F.R.D. 365 (S.D.N.Y. 2005).

1689173.1

of the class." Eisen, 391 F.2d at 564 (class may not be certified under Rule 23(b)(1) absent

evidence that multiple actions will be brought); In re Dennis Greenman Securities Litigation, 829

F.2d 1539, 1544-45 (11th Cir. 1987).  The risk of multiple actions "must be real not

hypothetical." Eliasen v. Green Bay & W.R.R., 93 F.R.D. 408, 412 (E.D. Wis. 1982), affirmed,

705 F.2d 461 (7th Cir. 1983), cert. denied, 464 U.S. 874 (1983).  "Therefore, the party seeking

class certification must demonstrate a likelihood that separate actions will in fact be brought if a

class action is not permitted." Eliasen, 93 F.R.D. at 412 (citing Eisen, supra).  Here, there is no

such risk, as prior to the commencement of this action, not a single employee had complained to

Faxton-St. Luke's that they had worked through a meal break without compensation.  Nor had

any employee made complaints about rounding, overtime, or "pre and post" shift work.  Scibelli

Declaration, ¶ 18; Boulerice Declaration, ¶ 14.  In the time since this action has been

commenced, no individual actions have been filed.  Of course, any employee who wanted to

press such a claim had the opportunity to opt into the FLSA collective action.

       Nor is it likely that individual adjudications would result in inconsistent results

that would "impair or impede" the ability of other class members to protect their interest.  As is

set forth above, adjudication of whether any particular plaintiff worked through a meal break

without compensation will vary from employee to employee.  The fact that one employee could

or could not establish that they worked through a meal break without compensation in violation

of the New York Labor Law would not in any way impair the right of another employee to bring

an action claiming they worked through a meal break without compensation.  See, e.g., In re

Dennis Greenman, 829 F.2d at 1545 ("inconsistent standards for future conduct are not created

because a defendant might be found liable to some plaintiffs and not to others").  Presumably,

1689173.1

before bringing such a lawsuit, however, the employee might seek to redress such issue with Faxton-St. Luke's.  As set forth above, to date, no employee has done so.

The two cases cited in plaintiffs' memorandum with respect to Rule 23(b)(1) class certification are prisoner cases, not wage and hour cases.  Ingles v. City of New York, 2003 U.S. Dist. LEXIS 2453 (S.D.N.Y. Feb. 20, 2003)(case brought on behalf of class of prisoners in New York City correctional system); Hilton v. Wright, 235 F.R.D. 40 (N.D.N.Y. 2006)(case brought on behalf of class of prisoners in New York State correctional system).

## III.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE PROPOSED STATE LAW CLASS CLAIMS

As Judge McAvoy concluded in De La Cruz, the Court should decline to exercise supplemental jurisdiction over the proposed state law class claims.  De La Cruz v. Gill Corn Farms, Inc., 2005 U.S. Dist. LEXIS 44675 (N.D.N.Y. Jan. 25, 2005).  Judge McAvoy followed the decision of the Third Circuit in De Asencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003).  In De Asencio, plaintiffs brought an action on behalf of employees at two chicken processing plants in Pennsylvania, asserting claims under both the FLSA and the Pennsylvania Wage Payment and Collection Law.  342 F.3d at 304.  Just as here, plaintiffs first moved for a collective action under the FLSA.  Notice of the FLSA action was sent to 3,400 prospective plaintiffs.  Only 447 opted in.  342 F.3d at 305.  The district court exercised supplemental jurisdiction over the state law claims and granted class certification.  The Third Circuit reversed, holding that the district court had abused its discretion.  The Third Circuit noted that Congress had specifically provided an opt-in procedure for FLSA collective actions, and that it was apparent that the plaintiffs were attempting "an end run around…clear congressional mandate in favor of collective opt-in actions."  342 F.3d at 307.  The Third Circuit stated:

1689173.1

> The way in which this suit evolved lends even greater
> credence to the conclusion that certification of the state law
> class was plaintiffs' second line of attack when the FLSA
> opt-in period yielded a smaller than desired federal class.

342 F.3d at 312.

The Third Circuit stated that it would be inappropriate to exercise federal

supplemental jurisdiction over state law claims where the practical effect would allow "the

federal tail represented by a comparatively small number of plaintiffs to wag what is in substance

a state dog." 342 F.3d at 311. See also Burkhart-Deal v. Citifinancial, Inc., 2008 U.S. Dist.

LEXIS 44469, at *9 (W.D. Pa June 5, 2008) ("the inherent incompatibility of Plaintiff's FLSA

claims and state law class claims … require dismissal of the state law class claims"); Ellis v.

Edward D. Jones Co., 527 F. Supp. 2d 439 (W.D. Pa. 2007).[7]

Judge McAvoy likewise declined to exercise supplemental jurisdiction over the

New York Labor Law claims in De La Cruz:

> Thus, the New York claim likely will involve substantially
> more class members than the federal claim. . . .  Although
> the legal analysis is essentially identical under the FLSA
> and New York's Labor Law, thereby distinguishing this
> case, in part, from De Asencio, the sheer numbers involved
> would cause this case to become predominated by state
> claims.  Thus, taking into consideration whether a class
> action is a superior method under the facts and
> circumstances presented and whether the Court should
> exercise supplemental jurisdiction where the state claim
> substantially predominates over the federal claim or for
> other compelling reasons, see 28 U.S.C. §1367(c)(2) and
> (c)(3), the Court declines to certify the state law claim.
> Even if certification was proper (under either 23(b)(2) or
> 23(b)(3)), the Court would decline to exercise supplemental
> jurisdiction over a state Labor Law class claim.

De La Cruz, 2005 U.S. Dist. LEXIS, at *23-24.

---

[7]  The Second Circuit has granted leave to appeal an order granting class certification in Shahriar v. Smith & Wollensky Restaurant Group, Inc., 08-CV-00057-MGC (S.D.N.Y.) (Docket No. 65), which presents the issue of whether a district court should certify a New York Labor Law class after certifying a collective FLSA action.

1689173.1

Several other courts, like Judge McAvoy in De La Cruz, have declined to exercise supplemental jurisdiction over state law class claims in FLSA collective actions.  See McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 577-78 (N.D. Ill. 2004) ("Section 1367(a) . . . does not contemplate a plaintiff using supplemental jurisdiction as a rake to drag as many members as possible into what would otherwise be a federal collective action"); Jackson v. City of San Antonio, 220 F.R.D. 55, 60 (W.D. Tex. 2003) (finding that certification of a Rule 23 class of over 2000 individuals in an FLSA case with just 190 opt-in plaintiffs "would dramatically favor the state law claim" and "flaunt the Congressional intention that FLSA claims proceed as an opt-in scheme"); Harper v. Yale Int'l Ins. Agency, Inc., 2004 U.S. Dist. LEXIS 8476, at *18 (N.D. Ill. May 13, 2004) (decertifying state-law class filed in federal court and declining to exercise supplemental jurisdiction over the claims; holding that plaintiffs had "arguably subverted congressional intent" with their dual-filed action); Hasken v. City of Louisville, 213 F.R.D. 280, 283 (W.D. Ky. 2003) (conditionally certifying FLSA class consisting of 20 opt-ins but refusing to exercise supplemental jurisdiction over 1,000 person state law class, noting that to accept jurisdiction over the state class "would be akin to the minnow swallowing the whale"); Zelaya v. J.M. Macias, Inc., 999 F. Supp. 778, 783 (E.D.N.C. 1998) (citing similar concerns); Aquilino v. Home Depot U.S.A., 2006 U.S. Dist. LEXIS 48554, at *7-12 (D.N.J. July 17, 2006) (same).

The exact same considerations apply here.  Plaintiffs' counsel successfully obtained certification of a collective action under the FLSA, and notice was sent to 2668 potential plaintiffs; as of today, there are only 149 opt-in plaintiffs.  Disappointed with this low turnout, plaintiffs' counsel now wants an opt-out class under the identical New York Labor Law claims.  Obviously, the state law claims would predominate, and the intent of Congress that these claims be brought on an opt-in basis would be completely thwarted.  The Court should thus

34

1689173.1

follow <u>De La Cruz</u> and decline supplemental jurisdiction over the New York Labor Law class claims.

## CONCLUSION

Plaintiff's motion, supported by cookie cutter affidavits, makes sweeping, but unsupported allegations of common unlawful policies.  Based on these allegations, the Court conditionally certified a collective action under the FLSA.  Thousands of notices went out inviting current and former employees to opt in to the action.  Currently, there are only 149 plaintiffs in the FLSA collective action.  Frustrated with the small size of their federal class, plaintiffs now want to pursue class certification of their New York Labor Law claims.  Such a certification would be an abuse of discretion and the motion should be denied.

Dated:  May 24, 2010                                Respectfully submitted,

                                                    BOND, SCHOENECK & KING, PLLC


                                                    By: _____
                                                         Jonathan B. Fellows, Esq.
                                                    *Attorneys for Defendants*
                                                    One Lincoln Center
                                                    Syracuse, New York  13202
                                                    Telephone:  315-218-8000

1689173.1

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2010, I electronically filed the foregoing
Memorandum of Law in Opposition to Motion for Rule 23 Class Certification with the Clerk of
the District Court using the CM/ECF system, which sent notification of such filing to the
following:

Patrick J. Solomon, Esq.
J. Nelson Thomas, Esq.
Thomas & Solomon LLP
693 East Avenue
Rochester, New York 14607

Jonathan B. Fellows

36

1689173.1