UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAWN HAMELIN; RAKIESHA GRIFFIN; and
JULIE FLINT; on behalf of themselves and all
other employees similarly situated,

                                    Plaintiffs,

        -v-                                          5:08-CV-1219

FAXTON-ST. LUKE'S HEALTHCARE; KEITH A.
FENSTEMACHER; ANTHONY SCIBELLI; FAXTON
NURSES ALUMNI ASSOCIATION, INC.; MOHAWK
VALLEY NETWORK, INC.; HEALTHFRIENDS, INC.;
ST. LUKE'S HOME RESIDENTIAL HEALTH CARE
FACILITY, INC.; MVN ENTERPRISES, INC.; NETWORK
DATA SYSTEM, LLC; NETWORK DATA SYSTEMS,
INC.; SENIOR NETWORK HEALTH, LLC; CENTREX
CLINICAL LABORATORIES, INC.; VISITING NURSE
ASSOCIATION OF UTICA AND ONEIDA COUNTY;
MOHAWK VALLEY HOME CARE, L.L.C.; MOHAWK
VALLEY HEART INSTITUTE, INC.; FAXCHIL REALTY, INC.;
FAXTON LEASING, LLC; FAXTON-ST. LUKE'S
HEALTHCARE FOUNDATION; FAXTON HOSPITAL, INC;
and FAXTON-ST. LUKE'S HEALTHCARE 401K PLAN,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

THOMAS & SOLOMON LLP                J. NELSON THOMAS, ESQ.
Attorneys for Plaintiffs            PATRICK J. SOLOMON, ESQ.
693 East Avenue                     CRISTINA A. BAHR, ESQ.
Rochester, New York 14607           GUY ANTHONY TALIA, ESQ.
                                    JUSTIN M. CORDELLO, ESQ.
                                    MICHAEL J. LINGLE, ESQ.
                                    PETER J. GLENNON, ESQ.
                                    SARA E. ROOK, ESQ.


BOND, SCHOENECK & KING, PLLC        JONATHAN B. FELLOWS, ESQ.
Attorneys for Defendants            R. DANIEL BORDONI, ESQ.
One Lincoln Center                  SUBHASH VISWANATHAN, ESQ.
Syracuse, New York 13202            SUZANNE M. MESSER, ESQ.

DAVID N. HURD
United States District Judge

### MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

Named plaintiffs Dawn Hamelin ("Hamelin"), Rakiesha Griffin ("Griffin"), and Julie Flint ("Flint") (collectively "plaintiffs") brought this action on behalf of themselves and other similarly situated employees against 27 named defendants including Faxton-St. Luke's Healthcare and various other inter-related entities[1] and individuals ("defendants" or "Faxton-St. Luke's") alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219 (2006) ("FLSA"), the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (2006) ("ERISA"), and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190-191 (McKinney 2002).

Defendants move for partial summary judgment dismissing eight opt-in plaintiffs pursuant to Federal Rule of Civil Procedure 56.  Plaintiffs oppose and move to certify the NYLL and ERISA claims as a class action pursuant to Federal Rule of Civil Procedure 23. Defendants oppose.  Both motions were considered on their submissions without oral argument.

## II.  BACKGROUND

The parties are presumed to be familiar with the facts underlying plaintiffs' claims in light of the number of written opinions already issued.  Nevertheless, a brief recitation of the procedural history is helpful for identifying the legal issues relevant to the present motions.

---

[1] Many defendants have since been dismissed.

Plaintiffs are each current or former employees of defendants.  Plaintiff Hamelin was employed by defendants as a Licensed Practical Nurse II from November 10, 1997, through February 22, 2007.  Plaintiff Griffin was employed as a Certified Nursing Assistant from May 8, 2006, through July 19, 2006.  Plaintiff Flint began her employment with defendants on July 2, 1990, and remains employed by them today as a Licensed Practical Nurse II. They commenced this action alleging they and other similarly situated employees were required to work through meal breaks, before and after scheduled shifts, and in excess of forty hours per week, without compensation.  Specifically, they challenge four of defendants' policies.  First, defendants automatically deduct 30 minutes each day from an employee's pay for a meal period using the Kronos computerized system even though employees often miss their meal period due to patient care demands.  Second, defendants pay in one-quarter hour segments and thus round an employee's time at the beginning and end of each day.  According to defendants' policy

> [a]n employee must work more than seven (7) minutes in the quarter hour to be paid; thus, any employee who swipes in more than seven (7) minutes after the start of their scheduled shift, or swipes out more than seven (7), minutes before the end of their shift, will not be paid for the quarter hour.

Solomon Decl., Ex. B, Dkt. No. 197-1.  Third, plaintiffs allege defendants routinely allow and often require employees to work prior to clocking in and after clocking out.  Fourth, plaintiffs claim that defendants fail to include all remuneration in the regular rate of pay for purposes of calculating the overtime pay of those employees subject to premium pay for shift differentials.

On January 26, 2009, plaintiffs obtained conditional certification of a collective action under the FLSA pursuant to section 216(b).  Magistrate Judge David E. Peebles preliminarily certified the following class:

> All present and former hourly employees of Faxton-St. Luke's Healthcare and St. Luke's Home, including but not limited to registered nurses, licensed practical nurses, and certified nurses' assistants with direct patient care responsibilities who have been subject to automatic meal break deductions through use of the Kronos system, and who have or may have worked through or during unpaid meal breaks without compensation at any time during the past three years.

See Jan. 26, 2009, Decision & Order, Dkt. No. 66, 29-30.  Following the conditional certification, notice was mailed to the 2,668 current and former direct patient care employees eligible to join the FLSA collective action.  The parties also engaged in limited discovery related to plaintiffs' instant motion for class certification.  Since that time the parties have litigated the eligibility of certain opt-in plaintiffs.  The parties stipulated to the dismissal of some ineligible plaintiffs while others were excluded as the result of motions to dismiss made by defendants.  At the time of the instant motions, 149 eligible current or former employees have opted-in to the FLSA collective action.

## III.  DISCUSSION

### A.  Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment dismissing certain opt-in plaintiffs ("disputed plaintiffs") from this action.  The eight disputed plaintiffs are: Eileen M. Cain, Vincenza Coleman, Katherine Farkas Dawes, Jennifer L. Dunlap, Deborah Hanley, Andrea R. Helmer, Marilyn D. Purcell, and Randy L. Lohnas.  Disputed plaintiffs opted-in to this collective action pursuant to a Notice and Consent Form.  By Order dated November 23, 2009, Magistrate Judge Peebles permitted defendants to direct interrogatories to each opt-in plaintiff to determine what claims they were asserting.  115 of the 179 opt-in plaintiffs answered the interrogatories.  The interrogatory at issue posed the following question: "Do you claim to have worked through or during a meal break without compensation during your

employment at the Hospital [or the Home] since October 30, 2002?"  The disputed plaintiffs

each answered "no" to the interrogatory.  In opposition to defendants' motion for partial

summary judgment, disputed plaintiff Randy Lohnas filed an affirmation qualifying his

previous answers.  Solomon Affirm., Ex. H ("Lohnas Affirm."), Dkt. No. 208-1.  His statement

reaffirms his prior interrogatory response but states that it was based upon his "knowledge at

that time to the best of [his] recollection and without reviewing any of [his] employment

records."  Id. ¶ 4.  Specifically with respect to the meal break claim, he stated:

> Although I do not recall working through or during a meal without
> compensation during my employment with the hospital since October
> 2002, my answer to Interrogatory 2 above may change if my employment
> records in fact reveal something different or cause me to recall something
> I did not remember when answering the interrogatories.

Id. ¶ 7.

Defendants contend the eight plaintiffs at issue do not qualify under the FLSA

certification order because they admitted they did not work through or during a meal break

without compensation.  Plaintiffs argue they are entitled to discovery before dismissal

because the alleged violations are technical in nature and depend on documentary evidence

yet to be uncovered.  They further maintain that defendants have not proven they are entitled

to judgment as a matter of law against the disputed plaintiffs on all claims in the complaint.

The parties also dispute the binding nature of interrogatory responses and the effect that

opting-in to the FLSA collective action has on participating in the remaining claims in this

action.

Summary judgment must be granted when the pleadings, depositions, answers to

interrogatories, admissions and affidavits show that there is no genuine issue as to any

material fact, and that the moving party is entitled to summary judgment as a matter of law.

Fed. R. Civ. P. 56.  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  <u>Id</u>.  Then the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  <u>Id</u>.

The Second Circuit has not ruled on the issue of whether interrogatory responses are binding judicial admissions but several district courts have determined they are.  <u>See, e.g.</u>, <u>Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Group, PLC</u>, No. 05 Civ. 8665, 2008 WL 4449412, at *11 (S.D.N.Y. Sept. 30, 2008) ("[I]n this Circuit, contention interrogatories are treated as judicial admissions 'that generally stop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses.'") (quoting <u>Wechsler v. Hunt Health Sys., Ltd.</u>, No. 94 Civ. 8294, 1999 WL 672902, at * 2 (S.D.N.Y. Aug. 27, 1999)); <u>see also</u> <u>Zeigler v. Marriott Int'l, Inc.</u>, No. 03 Civ. 7688, 2005 WL 1022431, at *11 (S.D.N.Y. May 2, 2005) (plaintiff's complaint and interrogatory responses "constitute admissions and limit his potential claims"); <u>Guadagno v. Wallack Ader Levithan Assocs.</u>, 950 F.Supp. 1258, 1261 (S.D.N.Y. 1997) (observing that interrogatory responses are generally treated as judicial admissions, and that "[a] judicial admission is conclusive, unless a court allows it to be withdrawn"), <u>aff'd</u> 125 F.3d 844 (2d Cir. 1997) (unpublished table decision).

This issue was recently addressed in the Western District of New York.  <u>See</u> <u>Grace v. U.S.</u>, --- F.Supp.2d ---, No. 08-CV-6006, 2010 WL 4451818, at *11 (W.D.N.Y. Nov. 4, 2010).  In <u>Grace</u>, the United States attempted to bar a plaintiff from pursuing a claim based on his original interrogatory response.  <u>Id</u>.  The court reviewed the Advisory Committee's notes to Federal Rule of Civil Procedure 33 governing interrogatories.   The notes indicated that interrogatories generally do not limit proof, however in cases where reliance on an answer may cause prejudice, a court may find the answer binding.  The <u>Grace</u> Court

determined that the plaintiff was not bound by his original interrogatory answer because his response was conditional,[2] he amended his response two months later, and the United States learned about his more expansive theory of liability during a deposition one month after the interrogatory response.  Based on these facts the court determined the United States was not prejudiced.

Grace is distinguishable from the instant matter.  Here, plaintiffs allege defendants violated the FLSA and the NYLL by implementing four different policies.  Defendants served disputed plaintiffs with interrogatories to determine which policy each opt-in plaintiff is proceeding under.  This is the type of general information that defendants need to adequately defend themselves and must rely on such information to craft motions and a defense strategy.  Defendants would be prejudiced if responding opt-in plaintiffs were permitted to change their responses as the case proceeds.  It should also be noted that both parties relied on responding plaintiffs' interrogatories in dismissing many opt-in plaintiffs who did not meet the class definition because of their dates of employment, job duties, or pay category.

The class was certified as direct patient care workers "who have or may have worked through or during unpaid meal breaks without compensation at any time during the past three years."  Based on the disputed plaintiffs' answers, under penalty of perjury, none asserted that they have or may have worked during a meal break without pay and therefore they fall outside the conditionally certified class and must be dismissed.  See Mar. 26, 2010, Memorandum-Decision & Order, Dkt. No. 191, 5 (dismissing plaintiffs who necessarily fall

---

[2] He stated "*[a]t present time*, the only natural person plaintiff knows . . . ."

outside conditionally certified class because they did not work for defendants within the past three years as required by putative class definition).  Disputed plaintiff Randy Lohnas' affirmation is insufficient to raise a triable issue of fact.  His affirmation does not amend his previous response of "no" as to whether he worked through a meal period without pay. Instead, it reaffirms that he does not recall working through a meal period without pay but adds that his answer may change depending on what his employment records reveal. Concerning plaintiffs' contention that more discovery is needed, whether plaintiffs worked during a meal break without pay is well-within their knowledge and not something to be determined by conducting discovery.

With respect to plaintiffs' argument that the disputed plaintiffs may allege violations other than the meal break claim and therefore cannot be dismissed, this issue has already been decided.  See May 27, 2009, Memorandum-Decision & Order, Dkt. No. 102. Individuals who opt-in to the FLSA collective action do not just opt-in as to a claim, but instead opt-in to the action in its entirety and may seek damages for all claims asserted in the complaint, not just the meal break claim.  Id. at 9.  This eliminates the need for an opt-in plaintiff to opt-in again at a later date should additional claims be added.  Id.  This remains one lawsuit and plaintiffs may assert violations of all, none, or a combination of defendants' alleged unlawful policies.

However, an opt-in plaintiff to the FLSA collective action must still meet the requirements to opt-in.  While an opt-in plaintiff to the FLSA collective action becomes a part of the lawsuit in its entirety and may assert additional claims, the opposite is not necessarily true.  Simply stated, one is who ineligible to opt-in to the FLSA collective action may nevertheless still be eligible to be a part of the lawsuit.  Indeed, there may be an infinite

number of individuals who were not eligible to opt-in under the Notice and Consent Form because they did not have direct patient care responsibilities.  Some of those same individuals however may be able to proceed in a class action if such classes are not limited to employees with direct patient care responsibilities.  Likewise, the preliminarily certified FLSA class is limited to people employed within the last three years, based on the FLSA's three year statute of limitations, while a class action could potentially include people employed within the previous six years, based on the NYLL's six year statute of limitations.

In attempting to show defendants are not entitled to judgment as a matter of law plaintiffs have submitted payroll records of numerous employees to raise issues of fact.  Such documents relate to violations other than the meal break claim.  For the reasons discussed above, those issues are not relevant to the disputed plaintiffs' inclusion in the FLSA class conditionally certified on January 26, 2009.  Plaintiffs also contend that summary judgment is inappropriate pursuant to Rule 56(f) because facts essential to justify plaintiffs' opposition are yet to be obtained.  In support of this argument plaintiffs' counsel filed an affirmation indicating that discovery is needed as to other violations, including whether employees' pay was impermissibly rounded and whether shift differentials were properly applied.  This may very well be true, but the instant motion for partial summary judgment is only to dismiss the disputed plaintiffs from the FLSA collective action.  That class was preliminarily certified only as to the meal break claims of a limited class – those hourly employees with direct patient care responsibilities subject to the automatic meal break deduction policy who claimed to have worked during a meal period without compensation during the prior three years.

Accordingly, defendants' motion for partial summary judgment will be granted and the following opt-in plaintiffs will be dismissed from the conditionally certified FLSA collective action: Eileen M. Cain, Vincenza Coleman, Katherine Farkas Dawes, Jennifer L. Dunlap, Deborah Hanley, Andrea R. Helmer, Marilyn D. Purcell, and Randy L. Lohnas.

### B. Plaintiffs' Motion for Class Certification

Plaintiffs move pursuant to Federal Rule of Civil Procedure 23 for class certification of the NYLL and ERISA claims and the appointment of Thomas & Solomon LLP as class counsel. Plaintiffs' proposed class includes all current and former hourly employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked. They propose four subclasses.

### 1. Legal Standard

The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of the Rule 23 requirements have been met. Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202-03 (2d Cir. 2008). Rule 23 should be given "liberal rather than restrictive construction" and courts should "adopt a standard of flexibility." Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (quoting Sharif ex rel. Salahuddin v. N.Y. State Educ. Dep't, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)). Trial courts are given substantial discretion in determining whether to grant class certification. See e.g., Sumitomo Copper Litig.v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 139 (2d Cir. 2001). Doubts about whether Rule 23 has been satisfied should be resolved in favor of certification. Barrus v. Dick's Sporting Goods, Inc., --- F.Supp.2d ----, No. 05-CV-6253, 2010 WL 3075730, at *3 (W.D.N.Y. Aug. 5, 2010); Pyke v. Cuomo, 209 F.R.D. 33, 40 (N.D.N.Y. 2002) (McCurn,

J.).  In addition, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims."  See Shabazz v. Morgan Funding Corp., 269 F.R.D. 245, 249 (S.D.N.Y. 2010) (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006)).

        To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy.  See Teamsters Local 445, 546 F.3d at 201-02.  After overcoming that hurdle, the class must fit into one of the three Rule 23(b) subdivisions.  Each proposed subclass must independently meet the requirements of Rule 23.  See Warren v. Xerox Corp., No. 01-CV-2909, 2004 WL 1562884, at *17 (E.D.N.Y. Jan. 26, 2004); Burka v. N.Y.C. Transit Auth., 110 F.R.D. 595, 601 (S.D.N.Y. 1986).

### 2.  Proposed Subclasses

        Subclass I includes all current and formerly hourly employees of defendants from November 13, 2002, to present whose pay was subject to an automatic 30 minute deduction even when the employees were not afforded a bona fide meal period of at least 30 minutes and who were therefore not paid for all compensable work time (the "Meal Break Deduction Class").  The violations that form the basis for this subclass are based on NYLL sections 190 and 191, which incorporate FLSA standards for determining whether time worked is compensable time.  Subclass II is comprised of all current and former hourly employees of defendants from November 13, 2002, to present who were suffered or permitted to perform work before or after their scheduled shift but were not paid for such work.  These violations are the result of defendants' rounding policy and alleged practice of permitting work before punching in and after punching out (the "Pre and Postliminary Work Class").  Subclass II is

also based on violations of NYLL.  Subclass III includes all current and formerly hourly employees of defendants from November 13, 2002, to present subject to shift differential premium payments (the "Regular Rate Class") and is based on NYLL which incorporates FLSA standards for determining whether an employee's overtime rate has been calculated upon the proper regular rate of pay.

Subclass IV is unique in that its existence rests in part on the survival of any of the above subclasses.  This subclass is made up of all current and former hourly employees covered by defendants' 401(k) retirement plan who were not properly credited for all hours worked and consequently suffered a reduction in retirement benefits (the "ERISA Class"). Subclass IV violations are premised on the fiduciary standards set out by ERISA.  To the extent that the class certification requirements are met for any of the above subclasses, the requirements will then be examined with respect to Subclass IV.

After consideration of defendants' opposition and newly presented evidence, plaintiffs withdraw the certification motion as to claims involving impermissible rounding (part of Subclass II) and regular rate-shift differential claims (Subclass III).  Thus, only Subclasses I, II (relating to work before and after shifts), and IV need be discussed.

Under Rule 23(c), a court may divide a class into subclasses when all members of the class challenge the same conduct by a defendant but assert varying specific interests and legal theories.  See Fed. R. Civ. P. 23(c)(4)-(5); Warren, 2004 WL 1562884, at *17. Here, subclasses are appropriate because all members of the proposed class challenge defendants' policies as violative of the FLSA, NYLL, and ERISA, but the claims are based on four distinct alleged policies and not all proposed class members assert claims in each subclass.

### 3. **Rule 23(a) Requirements**

The Rule 23(a) prerequisites to a class action are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, while it is not explicitly spelled out in Rule 23, courts have added an "implied requirement of ascertainability" with respect to the class definition. In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006).

#### a. **Numerosity**

The first requirement that plaintiffs must prove under Rule 23(a) is that the prospective class is so numerous that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n, 446 U.S. 318, 330, 100 S. Ct. 1698, 1706 (1980). In the Second Circuit "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Defendants currently employ 2,701 hourly employees who are all subject to the automatic meal break deduction policy. Despite the application of the policy to this large group, defendants argue the low number of FLSA opt-in plaintiffs weighs against a finding that joinder is impracticable. See Thiebes v. Wal-Mart Stores, Inc., No. CIV. 98-802-KI, 2002 WL 479840, at *3 (D. Or. Jan. 9, 2002) (finding that small percentage of opt-in plaintiffs to FLSA collective action cautions against a finding that joinder is impracticable where only 2.7% of potential class members opted-in). Courts in the Second Circuit have rejected

Thiebes and continue to assess numerosity based on the number of proposed class members rather than the number of opt-ins.  See Niemiec v. Ann Bendick Realty, No. 1:04-cv-00897, 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2008) ("Thiebes is inapposite as there are other cases within this circuit supporting a finding of numerosity despite a low number of opt-in plaintiffs when certain mitigating factors are present."); see also Shabazz, 269 F.R.D. at 249 (finding numerosity based on 355 identified potential class members despite only 79 of that same group opting-in to FLSA collective action); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (finding same with several hundred potential class members and only three opt-ins because of employees' fear of reprisal in joining FLSA collective action); Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 267 (D. Conn. 2002) (finding same with 281 potential class members and only 22 opt-ins).  Numerosity for Subclass I is easily established based on the 2,701 current hourly employees subject to the challenged policy.

With respect to Subclass II, plaintiffs contend that based on the 2,701 hourly employees and the testimonial evidence concerning off the clock work, it is reasonable to infer that this subclass would be comprised of more than 40 employees.  Plaintiffs submit affidavits of five employees who claim they regularly performed work before and after their scheduled shift and were not paid for such work.  Solomon Decl., Ex. JJ ("Leo Aff."), Ex. KK ("Abdo Aff."), Ex. LL ("Schrader Aff."), Ex. MM ("Larkin-Hill Aff."), Ex. NN ("Fletcher Aff."), Dkt. No. 197-6.  Plaintiffs also attach the interrogatory responses of 38 opt-in plaintiffs who each state that they have worked before or after a shift without pay.  Solomon Decl., Ex. OO, Dkt.

No. 197-7.[3]  Defendants do not address numerosity with respect to this subclass.  It is

questionable whether plaintiffs have met their burden of establishing numerosity for Subclass

II based solely on the five affidavits and 38 interrogatory responses.  There is no uniform

policy here applied to all 2,701 hourly employees like that applicable to Subclass I.  However,

plaintiffs may rely on reasonable inferences drawn from the available facts to estimate the

size of the class.  See e.g., Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 362 (E.D.N.Y.

2009); Noble, 224 F.R.D. at 338; Cortigiano v. Oceanview Manor Home for Adults, 227

F.R.D. 194, 204 (E.D.N.Y. 2005) ("[C]ourts are empowered to make common sense

assumptions to support a finding of numerosity.").  Considering the evidence, including the

five affidavits and 38, or 44 according to defendants, interrogatory responses, it is

reasonable to infer that the subclass, currently comprised of nearly 40 potential class

members, is sufficiently numerous such that joinder is impracticable.  Numerosity has been

satisfied for Subclass II.

### b.  Commonality and Typicality

The second and third requirements, commonality and typicality, tend to merge and

are generally examined together.  Commonality requires a showing that the prospective class

members share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  "It is not

necessary that all of the questions raised by arguments are identical; it is sufficient if a single

common issue is shared by the class."  Weiss v. La Suisse, Societe D 'Assurances Sur La

Vie, 226 F.R.D. 446, 449 (S.D.N.Y. 2005) (citing Robinson v. Metro-North Commuter R.R.

Co., 267 F.3d 147, 155 (2d Cir. 2001)).  Put another way, "Rule 23(a)(2) does not require the

---

[3] Defendants submit that 44 opt-in plaintiffs claim to have worked before or after a shift without pay.  See Fellows Decl., Dkt. No. 216-1, ¶ 17.

plaintiffs to demonstrate that the class members' claims are identical; rather, it demands that the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiffs' claim as to that of the other members." Weber v. Align Tech., Inc., No. 5:07-CV-0535, 2010 WL 2265418, at *4 (N.D.N.Y. June 2, 2010) (Suddaby, J.) (quoting Dodge v. Cnty. of Orange, 208 F.R.D. 79, 88 (S.D.N.Y. 2002)) (internal quotations omitted).

Typicality requires that claims or defenses of the representative parties are typical of those of the prospective class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." Marisol A. v. Giuliani, 929 F.Supp. 662, 691 (S.D.N.Y.1996), aff'd, 126 F.3d 372 (2d Cir. 1997). The claims of the named plaintiffs however do not need to be identical with those of each class member. Marriott v. Cnty. of Montgomery, 227 F.R.D. 159, 172 (N.D.N.Y. 2005) (Hurd, J.).

Plaintiffs contend commonality and typicality are met because the claims of all proposed class members derive from the same policies and are based on the same legal theories. Defendants first argue that because the proposed class would include over 364 different job titles, covering 195 different departments, and multiple facilities, the named plaintiffs' claims are not common with or typical of the proposed class. With respect to Subclass I, they maintain that because there is no common unlawful meal break policy – automatic meal break deductions are not alone a violation of the FLSA and defendants' actual policy is to pay employees for missed meal breaks – that plaintiffs cannot satisfy commonality and typicality.

First, that the proposed class includes a variety of job titles is irrelevant in terms of typicality and commonality. Scholtisek v. Eldre Corp., 229 F.R.D. 381, 390 (W.D.N.Y. 2005)

("That these employees may have had different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to [the named] plaintiff's claims.  What <u>is</u> important is that these employees were allegedly subject to a common practice or scheme . . . in violation of the FLSA.").  For <u>Subclass I</u> it is undisputed that all hourly employees are subject to the automatic meal break deduction.  It is not the policy alone that plaintiffs claim is unlawful but instead the manner in which it is implemented.  This gives rise to the common legal questions of whether the policy for voiding the automatic deduction and the alleged failure to ensure that breaks were taken constitute violations of the NYLL.  Accepting as true plaintiffs' allegation that defendants employ a company-wide automatic deduction policy yet delegate to department supervisors the task of overseeing the cancellations raises the common question of whether this delegation is in compliance with the law.  The named plaintiffs' claims are typical of this subclass because they are hourly employees subject to the automatic meal break deduction but who often worked during their meal breaks and were not compensated for them.

Additionally, defendants' argument that class certification is inappropriate based on the varying number and frequency of missed meal breaks, how often the automatic deduction was cancelled, and whether supervisors discouraged employees from requesting payment for missed meal breaks is unpersuasive.  That different employees suffered varying degrees of harm goes to damages, not liability.  Likewise, the fact that only some supervisors, and not all, may have discouraged employees from requesting cancellation of the automatic deduction does not prevent class certification.  Such inconsistencies in defendants' practices should not serve to punish plaintiffs.  Plaintiffs have established commonality and typicality for <u>Subclass I</u>.

With respect to Subclass II, the common question is whether defendants maintained a policy whereby hourly employees systematically and uniformly were required to work prior to clocking in and after clocking out. That question is shared by all members of the proposed subclass. By way of interrogatory responses, named plaintiffs Hamelin and Griffin claim to have worked before and after their scheduled shifts without compensation and thus their claims are typical of the members of proposed Subclass II. See Fellows Decl., Exs. J & K, Dkt. No. 216-2. The fact that named plaintiff Flint does not claim to have worked before or after her shift without pay does not preclude a finding of typicality because the claims of the named plaintiffs do not need to be identical with those of each class member. See Fellows Decl., Ex. L, Dkt. No. 216-2. Accordingly, plaintiffs have established commonality and typicality for Subclass II.

### c. Adequacy

The final requirement under Rule 23(a) is for the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A court must determine whether the named plaintiffs' interests are antagonistic to the interests of other members of the class and whether counsel for the prospective class is qualified, experienced, and generally able to conduct the litigation. Brown v. Kelly, 609 F.3d 467, 479 (2d Cir. 2010); Hilton v. Wright, 235 F.R.D. 40, 52 (N.D.N.Y. 2006) (Hurd, J.). Plaintiffs maintain there are no other pending actions alleging the same or similar causes of actions against these defendants and the class members' claims are similar so no conflict of interest will arise. They also provide evidence of proposed counsel's qualifications. Defendants dispute the named plaintiffs' adequacy based on their "cookie cutter affidavits" and take issue with counsel's failure to produce plaintiffs for scheduled depositions.

The affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims and no class members have interests antagonistic to one another. All proposed members of the class share a common interest in establishing that defendants violated NYLL. The attorneys seeking to represent the class have established they are qualified and able to conduct this litigation. Their experience is more fully discussed below pursuant to Rule 23(g). Based on the minute entry of the discovery conference held on March 23, 2010, before Magistrate Judge Peebles, scheduled depositions were cancelled and all depositions were put on hold until paper discovery is completed and pending the instant motion for certification. For these reasons, plaintiffs have demonstrated that they can adequately represent the interests of the proposed class.

### d. Ascertainability

Although Rule 23(a) does not expressly require that a class be definite in order to be certified, Second Circuit courts have implied a requirement that a class be identifiable before it may be properly certified. See, e.g., Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003). Class members do not actually need to be ascertained before certification, but a court must determine that the class will be ascertainable at some stage of the proceedings. Noble, 224 F.R.D. at 338. Ascertainability is usually found where membership in the class can be identified by "reference to objective criteria." Spagnola v. Chubb Corp., 264 F.R.D. 76, 97 (S.D.N.Y. 2010).

The parties' discussion considers only Subclass I. Defendants argue the proposed class definition is defective because an employee is a member of the proposed meal break class only if they worked through a meal break without being paid. Therefore the court would be required to make a merits determination for each potential class member to determine

whether they should be in the class.  In support of this argument, defendants cite <u>De La Cruz</u>

<u>v. Gill Corn Farms, Inc.</u>, No. 03-CV-1133, 2005 WL 5419056, at *6-7 (N.D.N.Y. Jan. 25,

2005) (McAvoy, J.).  In <u>De La Cruz</u>, the plaintiffs were employed by defendants as corn

packers and claimed they worked in excess of forty hours per week but were not paid

overtime wages at a rate of one and one half times their regular rate.  On plaintiffs' class

certification motion, the court noted that resolution of the overtime issue turned on whether

the work performed by plaintiffs fell within the FLSA's overtime exemption for farming.  The

proposed class included employees "who did not work in agriculture or secondary agriculture

as defined by the FLSA." <u>Id</u>. at *1.  The court took issue with this definition because whether

the workers, who regularly packed corn, were engaged in agriculture or secondary agriculture

within the meaning of the FLSA was a legal determination and made the class definition

unworkable.  The court noted that the proposed definition "begs the very legal question at

issue in this case" because the definition depended on a legal determination that had not yet

been made.  <u>Id</u>. at *6.  Until such a legal determination could be made, the court concluded it

would be impossible to manage that subclass.  Plaintiffs' revised class definition however,

which included "all employees of Defendants who packed produce at Gill Corn Farms, Inc.

between September 15, 1997 and September 15, 2003" was "more workable because it is

fact-based." <u>Id</u>.  The <u>De La Cruz </u>Court later went on to deny class certification on other

grounds.

     <u>De La Cruz</u> is distinguishable in that the class definition proposed by plaintiffs here

does not beg a legal determination.  <u>Subclass I</u> is comprised of all current and formerly

hourly employees of defendants from November 13, 2002, to present whose pay was subject

to an automatic 30 minute deduction even when the employees were not afforded a bona

fide meal period of at least 30 minutes and who were therefore not paid for all compensable

work time.  The legal determination lies in whether defendants' automatic deduction policy

and the manner in which it is implemented is in compliance with NYLL and the FLSA.

Whether a proposed class member fits into the class is a factual question.  The proposed

class definition calls for factual inquiries as to whether an individual hourly employee worked

through a meal period without pay.  Any problem presented by such factual inquiries is more

appropriately addressed when analyzing whether common questions predominate over

individual questions under Rule 23(b)(3).

Plaintiffs have met the prerequisites of Rule 23(a).  Consideration of the

requirements of Rules 23(b)(3), 23(b)(2) and 23(b)(1) will be determinative of the motion.

### 4.  Rule 23(b) Requirements

In addition to showing that the proposed class satisfies the four prerequisites of

Rule 23(a), plaintiffs must show that the class is "maintainable" under Rule 23(b).  A class

satisfies this requirement if it fits into one of the three alternative categories delineated by

Rule 23(b).  Plaintiffs argue class certification is proper under any of the Rule 23(b)

subdivisions.

### a.  Rule 23(b)(3)

Under Rule 23(b)(3), class certification is appropriate where "questions of law or

fact common to the members of the class predominate over any questions affecting only

individual members," and the court finds that class litigation "is superior to other available

methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

Plaintiffs maintain certification is proper under Rule 23(b)(3) because the common question

of whether defendants employ policies permitting hourly employees to work without

compensation applies to all members of the class.  They contend the answer to that question determines liability and can be established through generalized common proof showing defendants did not sufficiently ensure that employees were being paid for time worked during meal breaks.  They further argue that any individualized inquiries relate to damages, not liability, and resolution of those issues are manageable.  Defendants insist individualized questions of fact predominate over common issues because individualized inquiries would need to be made into whether each plaintiff worked through a meal break without pay to determine whether they belong in the class.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Myers, 624 F.3d at 547 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249  (1997)). Predominance is required to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  Myers, 624 F.3d at 547 (quoting Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007) (alteration omitted)).  Common questions predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

To determine whether a class action is the superior method of resolving the claims at issue, a court must consider Rule 23(b)(3)'s four factors.  Those factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164, 94 S. Ct. 2140, 2146 (1974).

         With respect to Subclass I, plaintiffs have made a sufficient showing that legal and factual questions relating to each class member's case can be achieved through class wide proof.  Factual questions regarding whether hourly employees worked through meal breaks without compensation may possibly be answered with the testimony of a representative sample of employees.  See e.g., Grochowski v. Phoenix Constr., 318 F.3d 80, 88 (2d Cir. 2003) ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages.").  Of the interrogatory responses submitted by FLSA opt-in plaintiffs, 92% of those responding claimed to have worked through or during a meal break without pay.  The legal question common to the entire class is whether defendants' automatic meal break deduction policy is in compliance with the law.  This includes, inter alia, whether defendants knew that employees performed work during their meal periods and if they did not know, whether they should have known; whether defendants prevented employees from performing work they did not want to pay for; whether they ensured meal breaks were actually taken; whether if the break was not taken, records were updated to reflect time worked; whether the policy requiring employees submit a form to cancel the automatic deduction impermissibly shifts the burden to record time from the employer to the employee; and whether employees were properly trained regarding the cancellation policy.

Individual class members have little need to control the prosecution of their claims separately. Further, the costs of maintaining separate actions would be prohibitive for potential class members and obtaining individual counsel may be difficult because of the relatively low individual damages. Neither party has advised of any pending litigation concerning the subject matter of the proposed class action. This forum is desirable for the parties as both of defendants' facilities, and most, if not all, of the proposed class members reside in the Northern District of New York.

Defendants contend a class action is not manageable because of the factual differences presented by individual plaintiffs claiming differing amounts in damages. They argue that a class action would result in hundreds of mini-trials because each class member must present individualized proof regarding when they worked through a meal break without compensation. This argument is unpersuasive. Considering the numbers alone, it is evident that a class action is superior to the adjudication of dozens, or hundreds, of separate actions. Admittedly, whether a particular class member worked through a meal period without compensation may be subject to individualized proof. Plaintiffs argue resolution of whether a class member worked through a meal break without compensation may be achieved by representative testimony. Whether that is permissible need not be decided at this point. Issues of individual damages arise in any class action based on unpaid wages and individualized inquiries will need to be made in the FLSA collective action which has already been conditionally certified. See e.g., Shabazz, 269 F.R.D. at 250-51. The existence of individualized claims for damages, alone, is not a barrier to class certification on grounds of manageability. Many of the remaining manageability arguments pertain to the hybrid nature of this lawsuit because it involves both FLSA and NYLL claims, and would simultaneously

utilize both opt-in and opt-out procedures.[4]  These arguments are addressed in more detail below in the context of supplemental jurisdiction.

After considering all the relevant factors, plaintiffs have met their burden of demonstrating that common questions predominate over individual issues and a class action is the superior method of resolving the claims.  The state law claims clearly arise out of the same nucleus of operative facts as the FLSA claims, which are going to be adjudicated in this court in any event.  Therefore plaintiffs' motion for class certification of <u>Subclass I</u> will be granted pursuant to Rule 23(b)(3).

The parties' briefing on the Rule 23(b)(3) requirements is almost entirely absent as to <u>Subclass II</u>.  After a thorough discussion relating to <u>Subclass I</u>, plaintiffs' memorandum of law summarily states "[s]imilarly, resolution of the common questions applicable to the rounding, pre and postliminary work and regular rate classes determine liability and thus predominate over any individual issues."  Pls.' Memo. of Law, Dkt. No. 196, 27.  The common question of whether defendants maintained a policy where hourly employees systematically and uniformly were required to work prior to clocking in and after clocking out was sufficient to meet the burden under Rule 23(a)'s commonality and typicality prerequisites.  That alone is not enough to meet the more demanding Rule 23(b)(3) predominance requirement.  <u>See Amchem</u>, 521 U.S. at 623-24, 117 S. Ct. at 2250 ("Even if Rule 23(a)'s commonality requirement may be satisfied . . .  the predominance criterion is far more demanding.").  Plaintiffs have not demonstrated <u>Subclass II</u> is sufficiently cohesive to

---

[4] Defendants cite <u>De La Cruz</u> to argue that overlap of a FLSA collective action and a Rule 23 class action based on NYLL claims is unmanageable.  2005 WL 5419056, at *6-7. The <u>De La Cruz</u> Court discussed the difficulty in managing such a suit under Rule 23(b)(3)(D).

warrant adjudication by representation.  Nor have they shown how common questions predominate this subclass when there is no alleged policy in place and the allegations merely state that plaintiffs were forced to work before and after their scheduled shifts without pay. Further, none of the affirmations submitted by the three named plaintiffs include any information about working before or after their scheduled shift without compensation.  <u>See</u> Solomon Decl., Exs. G, H, K, Dkt. 197-2.  Accordingly, plaintiffs have not demonstrated that common questions of law or fact predominate over individualized questions and <u>Subclass II</u> will not be certified under Rule 23(b)(3).

### b. <u>Rule 23(b)(2)</u>

Alternatively, plaintiffs argue that the classes may be certified under Rule 23(b)(2). This division permits class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  A class will be certified if "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury."  <u>Robinson</u>, 267 F.3d at 162.

Legal opinions, law review articles, and other publications have discussed the extent to which, if at all, money damages may be sought in a Rule 23(b)(2) class action.  <u>Id.</u> at 163 n.8.  Prior to the Second Circuit's decision in <u>Robinson</u>, many district courts only permitted certification of Rule 23(b)(2) class actions seeking money damages where the request for monetary relief was incidental to the requested injunctive relief.  <u>Id.</u> at 163; <u>see also</u> <u>Robinson v. Metro-North Commuter R.R. Co.</u>, 197 F.R.D. 85, 87-88 (S.D.N.Y. 2000) ("<u>Robinson II</u>") ("[T]he inherently individualized nature of the determination of damages . . . render[s] it predominant, and thereby make[s] class action status under Rule 23(b)(2)

inappropriate, except in those rare incidences in which the request for monetary relief [is] wholly 'incidental' to the requested injunctive relief.") vacated, Robinson, 267 F.3d 147.  On appeal from Robinson II, the Second Circuit in Robinson noted that "limiting (b)(2) certification to claims involving no more than incidental damages . . . forecloses (b)(2) class certification of all claims that include compensatory damages . . . even if the class-wide injunctive relief is the 'form of relief in which the plaintiffs are primarily interested.'"  Robinson, 267 F.3d at 163.  The Second Circuit rejected the lower court's bright-line rule and held that when determining certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court

> should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

Id. at 164; see also Parker v. Time Warner Entm't Co., 331 F.3d 13, 20 (2d Cir. 2003).

Plaintiffs contend the primary goal of this lawsuit is to restrain defendants' unlawful conduct and that they would bring the suit to enjoin defendants even in the absence of monetary recovery.  This argument is unpersuasive.  Plaintiffs have not presented evidence that they would do so were it not possible to recover the claimed lost wages and, for the ERISA subclass, credit for all hours worked.  Plaintiffs may be suing to end defendants' allegedly unlawful practices but the compensation they seek can hardly be coined as incidental.  While liability might be determined on a class wide basis, the issue of damages would most certainly "vary based on the subjective considerations of each class members'

claims." Robinson, 267 F.3d at 165. As previously discussed in the Rule 23(b)(3) analysis,

individualized inquiries would likely need to be conducted regarding whether each employee

worked through a meal break or before or after a shift without compensation to determine

damages. These damages are in contrast to incidental damages which "flow[ ] directly from

a finding of liability on the . . . claims for class-wide injunctive and declaratory relief." Id.

Even though certification of a class involving non-incidental monetary claims may be

permitted under Rule 23(b)(2), the facts here do not warrant it for either Subclass I or

Subclass II.

### c. **Rule 23(b)(1)**

Finally, plaintiffs contend that certification is also proper under Rule 23(b)(1). Rule

23(b)(1)(A) authorizes a class action if "prosecuting separate actions by or against individual

class members would create a risk of . . . inconsistent or varying adjudications with respect to

individual class members that would establish incompatible standards of conduct for the

party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Alternatively, Rule 23(b)(1)(B) permits

class certification where

> prosecuting separate actions by or against individual class members
> would create a risk of . . . adjudications with respect to individual class
> members, that, as a practical matter, would be dispositive of the interests
> of the other members not parties to the individual adjudications or would
> substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B). Certification under the second prong of Rule 23(b)(1) often

occurs when the putative class members' only source of recovery comes from a limited fund.

See e.g., Ortiz v. Fibreboard Corp., 527 U.S. 815, 834-38, 119 S. Ct. 2295, 2309 (1999).

The parties do not distinguish between Rule 23(b)(1)'s two subsections and only

Subclass I is discussed. Plaintiffs state that individual adjudications could result in different

conclusions regarding whether defendants' policies violate the law and would establish incompatible standards for defendants. Defendants contend there is no real risk of multiple actions because no employees complained of the practices before this lawsuit began. They are also certain that individual lawsuits would not result since "[i]n the time since this action has been commenced, no individual actions have been filed." Defs.' Mem. of Law in Opp'n, Dkt. No. 310, 31.

The risk of inconsistent adjudications is low because defendants, and presumably most if not all of its employees, are situated within the Northern District of New York and all related cases would likely be assigned to the same Judge. Further, while defendants' speculation that no individual action will be brought simply because none have been commenced thus far is less than convincing, plaintiffs have failed to sustain their burden to demonstrate that the risk of multiple actions is real and not hypothetical. Accordingly, class certification for neither Subclass I nor Subclass II is appropriate under Rule 23(b)(1).

### 5. Supplemental Jurisdiction

Defendants argue supplemental jurisdiction should not be exercised over the NYLL claims. They contend a hybrid action with both an opt-in FLSA collective action and an opt-out NYLL class is inherently confusing. See De La Cruz, 2005 WL 5419056, at *6. They also argue that the opt-out scheme for the NYLL claims thwarts congressional intent to use an opt-in scheme for FLSA claims and that the state law claims threaten to overwhelm the FLSA claims . See id. at *7. Plaintiffs maintain that a Rule 23 action and FLSA collective action are compatible and that supplemental jurisdiction should be freely exercised over concurrent state law wage and hour actions.

A federal court may decline to exercise supplemental jurisdiction where a state law claim "substantially predominates" over federal claims.  28 U.S.C. § 1367(c)(2); see Lindsay v. Gov't Emps. Ins. Co., 448 F.3d 416, 425 & n.12 (D.C. Cir. 2006).  "[T]he decision to decline supplemental jurisdiction should be guided by an assessment of 'judicial economy, convenience, fairness, and comity.'"  Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 162 (S.D.N.Y. 2008) (quoting Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006)).  Like in Damassia, none of the above mentioned factors counsel against exercising supplemental jurisdiction here.  The underlying factual bases for the federal and state claims are identical in this case.  The claims are based on the same allegedly unlawful policies, applied in the same uniform manner to all hourly employees.  It would be neither convenient nor economical to relitigate these policies in state court.  Similarly, fairness weighs in favor of exercising supplemental jurisdiction when taking into account the possible fear of reprisal and other reasons why an employee may not opt-in to a FLSA collective action.  Lastly, comity is no hurdle to supplemental jurisdiction as NYLL largely parallels the FLSA particularly with respect to the violations alleged in this matter.

Four circuits have considered the propriety of a district court's exercise of supplemental jurisdiction over state law wage and hour claims that are supplemental to a FLSA collective action.  See Ervin v. OS Rest. Servs., Inc., --- F.3d ----, 2011 WL 135708, at *1 (7th Cir. 2011) ("Nothing in the text of the FLSA or the procedures established by the statute suggests either that the FLSA was intended generally to oust other ordinary procedures used in federal court or that class actions in particular could not be combined with an FLSA proceeding."); Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761 (9th Cir. 2010) (following the District of Columbia Circuit and finding the exercise of supplemental

jurisdiction over state law claims proper because no novel questions of state law were present and state and federal claims were factually similar); Lindsay, 448 F.3d at 425 (concluding, in the context of an appeal under Rule 23(f), that the FLSA does not necessarily preclude an exercise of supplemental jurisdiction over related state law claims); De Asencio v. Tyson Foods., Inc., 342 F.3d 301, 312 (3d Cir. 2003) (determining that district court presiding over FLSA collective action erroneously exercised supplemental jurisdiction over state law Rule 23 claims).

Of the four circuits that have authored opinions on the issue, three have permitted simultaneous Rule 23 and FLSA section 216(b) actions.  The Third Circuit's decision in De Asencio  finding the two actions incompatible is distinguishable from the facts here.  In concluding that the district court improperly abused its discretion by exercising supplemental jurisdiction over a state law wage class action, the De Ascencio Court considered the novel issues of state law involved which would have required a more intensive factual inquiry than that needed for the FLSA claim.  342 F.3d at 311.  As previously discussed, the NYLL violations alleged by plaintiffs here stem from the same policies and practices of defendants, and NYLL largely parallels the FLSA.  Thus no novel issues of state law exist to deter the exercise of supplemental jurisdiction.

Further, district courts in the Second Circuit routinely allow hybrid wage and hour suits with opt-in FLSA collective actions alongside opt-out Rule 23 class actions.  See e.g., Duchene v. Michael L. Cetta, Inc., 244 F.R.D. 202, 204 (S.D.N.Y. 2007) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together."); see also Damassia, 250 F.R.D. at 164 (permitting hybrid action based on the overwhelming precedent in the Second Circuit

supporting certification of simultaneous NYLL class actions and FLSA collective actions);

Guzman v. VLM, Inc., No. 07-CV-1126, 2008 WL 597186, at *10 (E.D.N.Y. Mar. 2, 2008)

("[I]t is routine for courts in the Second Circuit to certify state labor law classes in FLSA

actions."); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 374-75 (S.D.N.Y. 2007)

(rejecting defendant's contention that supplemental jurisdiction should not be exercised over

NYLL claims in a simultaneous FLSA collective action and Rule 23 NYLL suit); Brickey v.

Dolencorp, Inc., 244 F.R.D. 176, 179 (W.D.N.Y. 2007) ("Rule 23 and FLSA actions are

routinely prosecuted together . . . .").

Nor does De La Cruz compel a different result.  In De La Cruz, Judge McAvoy

noted that "a notice that calls both for a decision to opt-in to a collective action and also

whether to opt-out of the class action . . . seems [to be] an inherently difficult task to [do] . . .

in a non-confusing manner."  2005 WL 5419056, at *6 (quoting De La Fuente v. FPM Ipsen

Heat Treating, Inc., 2002 WL 31819226, at *2 (N.D. Ill. 2002)).  While confusion is a

legitimate concern, the proposed class members in De La Cruz consisted of migrant farm

workers, many of whom did not speak English and likely had very little understanding of the

United States' legal system.[5]  2005 WL 5419056, at *6.  There is no indication that any of the

proposed class members in this case would face those added obstacles.  Any potential

confusion may be alleviated by carefully drafted notices and "any confusion that the dual

notices may cause" does not "significantly undermine the superiority of a class action."

---

[5] The court also found the confusion would be exacerbated by New York Civil Practice Law and Rule ("CPLR") section 901(b), "which would require persons opting out of the state law class action to waive liquidated damages available under the Labor Law."  De La Cruz, 2005 WL 5419056, at *6.  This concern is no longer applicable as the Supreme Court has held that CPLR section 901(b) does not apply to Rule 23 class actions and that liquidated damages available under New York law may be pursued in a federal class action.  Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., 559 U.S. ---,130 S. Ct. 1431, 1443-44 (2010).

Guzman, 2008 WL 597186 at *8.  Lastly, congressional intent would not be thwarted by permitting simultaneous FLSA opt-in and Rule 23 out-out actions.  See Damassia, 250 F.R.D. at 162 ("[I]t is not correct that allowing a class action under these circumstances would 'nullify Congress's intent.'").  Contra De La Cruz, 2005 WL 5419056, at *7.  The Damassia Court noted that section 216(b) applies only to FLSA wage claims, and Congress has not voiced its intent with respect to wage claims generally.  250 F.R.D. at 162.

Finally, the proposed NYLL class would not overwhelm the FLSA collective action as defendants contend.  See De La Cruz, 2005 WL 5419056, at *7 (denying certification because state law claims predominated based in part on the "sheer numbers" where no members had yet opted-in to the FLSA action).  Whether state law claims predominate over federal claims relates to the type of the claim, not the number of potential class members.  Damassia, 250 F.R.D. at 162 (citing Lindsay, 448 F.3d at 425)).  The type of state law claims here derive from the same set of facts relevant to the FLSA claims and thus the state law claims would not predominate over the federal claims.

Certification of the NYLL class alongside the conditionally certified section 216(b) FLSA collective action is appropriate in light of precedent in the Second, Seventh, Ninth, and District of Columbia Circuits supporting certification of simultaneous state labor law class actions and FLSA collective actions.

### 6. **Subclass IV**

As previously discussed, for the ERISA subclass to be certified, either Subclass I or Subclass II must first meet the certification requirements because the violations alleged in those subclasses form the basis for relief under Subclass IV.  Subclass IV then must

independently meet the Rule 23 requirements.  To clarify, after an analysis of the Rule 23 requirements, Subclass I will be certified and Subclass II will not.

Plaintiffs have not presented any evidence regarding defendants' retirement plan or the ERISA subclass despite an opportunity to do so.  The parties were permitted to engage in limited discovery relating to plaintiffs' instant motion for class certification but the record is devoid of any evidence relating to the ERISA subclass.  It is unclear how many potential class members participated in the retirement plan at issue.  Even though numerosity is met for Subclass I based on the 2,701 hourly employees and the uniform application of the automatic meal deduction policy, we are left guessing whether all of those employees, none, or a number in between participated in the retirement plan.  Nor have plaintiffs met their burden of establishing commonality and typicality for Subclass IV.  In fact, it is not clear that any of the named plaintiffs even participated in defendants' retirement plan.  Neither the affirmations submitted by Hamelin, Griffin, or Flint, nor the interrogatory responses from the opt-in plaintiffs provide any details regarding the retirement plan or the ERISA claims.  The Rule 23(a) prerequisites have not been met and there is no need to address the Rule 23(b) requirements.  Class certification of Subclass IV will be denied.

### 7.  Appointment of Class Counsel under Rule 23(g)

Plaintiffs' attorneys have petitioned to be appointed class counsel pursuant to Rule 23(g).  To be appointed, counsel "must fairly and adequately represent the interests of the class" and meet the requirements of Rule 23(g)(1)(B) and (C), which state, inter alia, that a court must consider (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action"; (3) "counsel's knowledge of the

applicable law"; and (4) "the resources counsel will commit to representing the class."  Fed.

R. Civ. P. 23(g)(1)(B)-(C).

Thomas & Solomon LLP has investigated the claims in this case and has

represented the plaintiffs since the start of this litigation over two years ago.  Their focus as a

law firm is on employment law, and in particular, wage and hour class actions.  They are

currently handling a number of wage and hour class actions throughout the country and have

represented plaintiffs in complex employment litigation in the past.  Plaintiffs' submissions

emphasize firm partner and counsel on this case Patrick J. Solomon's qualifications,

including his participation on various committees relating to employment and labor law and

his experience as a speaker on these topics.  Lastly, Thomas & Solomon vows to litigate this

case to conclusion and dedicate the resources necessary to achieve a successful outcome

for class members.  After consideration of the requirements of Rule 23(g), given their

experience and expertise in this area of law, plaintiffs' counsel will be appointed as class

counsel.

## IV. __CONCLUSION__

Defendants' motion for partial summary judgment dismissing eight opt-in plaintiffs

from the FLSA collective action will be granted because the disputed plaintiffs do not qualify

under the January 26, 2009, conditional certification order.  The disputed plaintiffs admitted

in their interrogatory responses that they did not work through or during a meal break without

compensation and thus they fall outside the conditionally certified FLSA class.  Disputed

plaintiff Lohnas' affirmation submitted in opposition to defendants' motion does not alter his

prior interrogatory response in which he disclaimed having worked through a meal period

without compensation.

Plaintiffs' motion for certification of Subclass I, the Meal Break Deduction Class, will be granted because plaintiffs have satisfied the Rule 23(a) requirements by a preponderance of the evidence.  They have also demonstrated that class certification is appropriate under Rule 23(b)(3) because questions common to the class predominate over individual questions and class litigation is a superior method of adjudicating these claims.

Plaintiffs' motion for certification of Subclass II, the Pre and Postliminary Work Class, will be denied.  Plaintiffs have satisfied the Rule 23(a) prerequisites but cannot establish that class certification is warranted under any of the Rule 23(b) subdivisions. Certification of Subclass IV, the ERISA Class, will likewise be denied because plaintiffs are unable to meet the Rule 23(a) requirements.  The sparse evidence offered by plaintiffs in support of Subclass IV is insufficient to meet their burden on a Rule 23 motion for class certification.

Finally, Thomas & Solomon LLP will be appointed class counsel for Subclass I pursuant to Rule 23(g) based on their experience in this area of law and their commitment to litigate this class action to completion.

Therefore, it is

ORDERED that

1.  Defendants' motion for partial summary judgment dismissing the eight disputed opt-in plaintiffs who failed to assert in the court approved interrogatories that they worked without pay during a meal break is GRANTED;

2.  The following plaintiffs are DISMISSED from the Fair Labor Standards Act collective action:

Eileen M. Cain, Vincenza Coleman, Katherine Farkas Dawes, Jennifer L. Dunlap, Deborah Hanley, Andrea R. Helmer, Marilyn D. Purcell, and Randy L. Lohnas;

3.  Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23 is GRANTED in part and DENIED in part as follows:

(1) Class certification is GRANTED as to Subclass I, the "Meal Break Deduction Class," and includes all current and formerly hourly employees of defendants from November 13, 2002, to present whose pay was subject to an automatic 30 minute deduction but were not afforded a bona fide meal period of at least 30 minutes;

(2) Class certification is DENIED as to Subclass II, the "Pre and Postliminary Work Class";

(3) Class certification is DENIED as moot as to Subclass III, the "Regular Rate Class"; and

(4) Class certification is DENIED as to Subclass IV, the "ERISA Class";

4.  Thomas & Solomon LLP is appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g); and

5.  The matter is referred back to Magistrate Judge David Peebles for further pre-trial proceedings.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 8, 2011
        Utica, New York.

- 37 -